KRAWCZYK v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 54477. Submitted March 8, 1982, at Detroit.—Decided
June 10, 1982. Leave to appeal applied for.

Plaintiff Mary Ann Krawczyk brought an action against defen-
dant Detroit Automobile Inter-Insurance Exchange in the Dis-
trict Court for the County of Lapeer to recover no-fault insur-
ance benefits allegedly due her as a result of injuries sustained
in an automobile accident. The district court, John P. Spires, J.,
held for the plaintiff, awarding a total judgment of $17,401.95.
Defendant appealed to the Lapeer Circuit Court claiming that
the district court improperly included retirement contributions
and replacement health insurance payments as part of plain-
tiff's damages and that the district court erred in rendering a
decision in excess of its statutory jurisdictional limit of $10,000.
The circuit court, Martin E. Clements, J., affirmed the district
court. Defendant appeals, by leave granted, seeking a determi-
nation whether certain fringe benefits are considered recover-
able "work loss" under the no-fault insurance act and whether
the judgment rendered by the district court was in excess of its
jurisdictional limit. *Held:*

1. Work-loss benefits under the no-fault insurance act are
limited to lost wages or salary income. Therefore, the district
court erred in granting work-loss benefits for profit sharing and
pension contributions, and the circuit court erred by concluding
that substitute health insurance costs were recoverable work-
loss benefits.

2. The district court's damage award was under the $10,000
amount-in-controversy jurisdictional limitation after subtract-
ing the amounts improperly awarded, interest, costs and attor-
ney fees.

3. Neither costs, attorney fees nor interest are considered in

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 7 Am Jur 2d, Automobile Insurance § 361.
[2] 7 Am Jur 2d, Automobile Insurance § 344.
[3] 7 Am Jur 2d, Automobile Insurance § 345.
[4, 5] 20 Am Jur 2d, Costs § 20.
  20 Am Jur 2d, Courts §§ 159, 163.

determining the jurisdictional amount, therefore, a valid damage award may be combined with costs, fees and interest to exceed the jurisdictional amount, without rendering the excess amount void or depriving the district court of jurisdiction.

4. The amounts awarded by the district court for profit-sharing, pension and health insurance premiums are vacated. The remaining award is affirmed.

Affirmed in part, vacated in part.

S. EVERETT, J., concurred with the majority opinion with the exception of the vacation of the profit-sharing award. He would hold that the plaintiff's loss of income from the profit-sharing plan involved in this case comes within the statutory definition of work loss and, therefore, plaintiff should have been reimbursed for that loss.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — WORK-LOSS BENEFITS —
   LOST WAGES.

   Work-loss benefits for which personal protection insurance benefits are payable under the no-fault insurance act are limited to lost wages or salary income; benefits for profit sharing, pension contributions and substitute health insurance costs are not proper work-loss benefits (MCL 500.3107[b]; MSA 24.13107[b]).

2. INSURANCE — NO-FAULT INSURANCE — OVERDUE PAYMENTS —
   INTEREST.

   The no-fault insurance act provides for interest on payments which, under the act, are overdue (MCL 500.3142; MSA 24.13142).

3. INSURANCE — NO-FAULT INSURANCE — ATTORNEY FEES.

   The no-fault insurance act provides for attorney fees for either party depending on the conduct of the other party (MCL 500.3148; MSA 24.13148).

4. COURTS — JURISDICTION — AMOUNT IN CONTROVERSY — COSTS —
   ATTORNEY FEES — INTEREST.

   Costs, attorney fees and interest are not considered in determining a court's amount-in-controversy statutory jurisdictional limitation.

5. COURTS — JURISDICTION — AMOUNT IN CONTROVERSY — COSTS —
   ATTORNEY FEES — INTEREST.

   A valid damage award may be combined with costs, attorney fees and interest to exceed a court's amount-in-controversy statu-

tory jurisdictional limitation without rendering the excess amount void or depriving the court of jurisdiction.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY S. EVERETT, J.

6. INSURANCE — NO-FAULT INSURANCE — WORK-LOSS BENEFITS —
   PROFIT-SHARING PLANS.

*A loss of income from an employee's profit-sharing plan is a work loss within the statutory definition of work loss provided in the no-fault insurance act where the employee's claim is for the loss of regular quarterly payments which were made by his employer to its employees out of the employer's profits and where the claim is not a claim for the loss of profits arising out of a capital investment or a combination of that and work (MCL 500.3107[b]; MSA 24.13107[b]).*

*Morrice, Lengemann & Rickard, P.C.,* for plaintiff.

*Bahls & Shamblin (Gromek, Bendure & Thomas,* by *Nancy L. Bosh* and *Judith A. Curtis,* of counsel), for defendant.

Before: D. C. RILEY, P.J., and R. B. BURNS and S. EVERETT,* JJ.

PER CURIAM. Plaintiff brought this action in district court to recover no-fault personal protection benefits under MCL 500.3107; MSA 24.13107. Plaintiff was involved in an automobile accident on February 17, 1978. As a result of injuries sustained therein, she had to miss work. At the time of the collision, defendant insured plaintiff's automobile. Immediately following the accident, defendant made some payments to plaintiff, however, a dispute developed later from which this appeal arises.

The trial court, sitting without a jury, found that defendant was liable to plaintiff in the following amounts:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"A. 85% of regular wages of $8,237.00 from October 17, 1978, to September 30, 1979.          $ 7,001.00

"B. 85% of profit-sharing of $4,784.00 from date of injury on February 20, 1978, to September 30, 1979.          4,066.00

"C. 85% of pension of $600.00 from date of injury on February 20, 1978, to September 30, 1979.          510.00

"D. Interest on $7,001.00 at 12% per annum from October 17, 1978 to December 5, 1979.          950.60

"E. Interest on a late payment of adjusted wages of $3,310.00 at 12% per annum for 3 months.          100.00

"F. Pro-rated health insurance premiums for 5 months.          390.00

"G. Medical bills.          745.00

"H. Attorney fee pursuant to MCL 500.3148; MSA 24.13148.          2,437.00

          $17,199.60

"I. Costs.          202.35

          $17,401.95"

Defendant appealed this judgment to the circuit court, claiming that the district court improperly included the retirement contribution and replacement health insurance payments as part of plaintiff's damages and that the district court erred in rendering a decision in excess of its statutory jurisdictional limit of $10,000. In a well-written opinion, Lapeer County Cricuit Court Judge Martin E. Clements affirmed the district court.

Defendant asks this Court to determine whether fringe benefits, such as profit-sharing payments, pension contributions, and employer health insurance payments, are considered recoverable "work loss" within the meaning of the no-fault act provi-

sion MCL 500.3107(b); MSA 24.13107(b). That section provides:

"Personal protection insurance benefits are payable for * * *.

"*Work loss consisting of loss of income* from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured and expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or of his dependent. Work loss does not include any loss after the date on which the injured person dies. Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his claim reasonable proof of a lower value of the income tax advantage in his case, in which case the lower value shall apply. The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. The maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner but any change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum." (Emphasis added.)

Plaintiff successfully argued to the trial court that since work loss consisted of lost income, which is not defined by the Legislature, recovery is not limited to wages and, therefore, the specified fringe benefits are recoverable. The trial court ruled that profit-sharing and retirement contributions were recoverable under the work-loss statute,

but the health insurance benefits were not recoverable because they are not considered taxable income by the government. However, the court awarded the cost of acquiring substitute health insurance as a recoverable expense under the act. The circuit court ruled that substitute health insurance was a type of recoverable work loss and not recoverable as a replacement service.

Defendant failed to raise, in circuit court, the issue of whether profit-sharing should be included in work-loss benefits. Nevertheless, as both parties have briefed this issue, this item will be considered along with pension and health insurance contributions to foster a final and just decision.

Section 3107(b) of the no-fault act was patterned after § 1(a)(5)(ii) of the Uniform Motor Vehicle Accident Reparations Act (UMVARA), 14 ULA (Master ed) 50. *Pries v Travelers Ins Co,* 86 Mich App 221, 223-224; 272 NW2d 247 (1978), *aff'd* 408 Mich 870; 289 NW2d 717 (1980). The UMVARA defines work loss as loss of income from work which the injured person would have performed if he had not been injured. The commissioner's comments appended to that section state:

I. " 'Work loss', * * * is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity."

\* \* \*

II. "Work loss is not restricted to the injured person's wage level at the time of injury."

\* \* \*

III. "Work loss includes not only lost wages, but lost profit which is attributable to personal effort in self-employment (as distinguished from profit attributable in investment) or the cost of hiring a substitute to perform self-employment services." 14 ULA (Master ed) 54.

The UMVARA considers lost earnings, lost wages and certain lost profits as "work loss". The act specifically recognizes that a person's wage level could conceivably rise after the injury but does not so recognize fringe benefits. The language indicates work loss includes not only lost wages but also certain lost profits and infers that fringe benefits are not recoverable work losses.

This interpretation of the Legislature's intent is bolstered by *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538; 302 NW2d 537 (1981). The Court in *Miller* had two issues before it: whether survivors' benefits payable under § 3108 of the no-fault insurance act should be computed on the basis of gross pay or take-home pay reduced by the amount of expenses avoided by reason of the decedent's death and whether remarriage of a widow reduces the amount of survivor benefits due under that section. Section 3108 defines the survivors' benefits as calculated from the "contributions of tangible things of economic value" by the deceased. Justice RYAN's opinion looked to the Legislature's intent and the UMVARA in answering the first question. In part IIIA of Justice RYAN's opinion, which all the Justices concurred with, he interpreted § 3108, survivors' benefits, by comparing it to § 3107(b), work-loss benefits. The definition of work-loss benefits was not an issue on appeal. However, the Court plainly put its judicial mind to the definition of that phrase when it stated: "work loss benefits are limited, by definition, to the loss of wage or salary income". *Miller, supra,* 563.

Justice LEVIN, concurring in part and dissenting in part in *Miller,* defined work loss as "income loss, measured by the amount of wages" lost. *Id.,* 574. This definition is consistent with Justice

RYAN'S. Justices COLEMAN and KAVANAGH concurred in the LEVIN opinion.

This Court is convinced, therefore, that work-loss benefits as per § 3107(b) are limited to lost wages or salary income. The trial court erred in granting benefits for profit sharing and pension contributions. The circuit court erred by concluding that the substitute health insurance costs were recoverable work-loss benefits.

MCL 600.8301; MSA 27A.8301 provides in part that:

"The district court shall have exclusive jurisdiction in civil actions when the amount in controversy does not exceed $10,000.00."

Plaintiff, in her complaint, claimed damages of $10,000. Defendant does not contend that the district court did not have initial jurisdiction but rather contends that the court does not have jurisdiction to enter a judgment in an amount in excess of its statutory jurisdictional limit. *Zimmer v Schindehette,* 272 Mich 407; 262 NW 379 (1935), is cited by defendant for support of its position. *Zimmer* involved the jurisdiction of a justice of the peace. At that time, the justice of the peace had concurrent jurisdiction to the amount of $300. The complaint alleged that the plaintiff was indebted in the sum of $350, and the final verdict was for $404.85 and costs. The Court ruled that the judgment rendered by the justice in excess of his jurisdiction was void. *Id.,* 409.

The trial court in this case made an overall award of $17,401.95. In light of our decision regarding work loss, items B, C and F, as designated in the trial court's award, must be subtracted from

the overall award. The trial court's proper award becomes $12,435.95.

This figure includes interest, costs and attorney fees. The no-fault act provides for interest on payments which, under the act, are overdue. MCL 500.3142; MSA 24.13142. The act also provides for attorney fees for either party depending on the conduct of the other party. MCL 500.3148; MSA 24.13148. As a general rule, neither costs, attorney fees nor interest is considered in determining the jurisdictional amount. Courts, 20 Am Jur 2d, §§ 159-163, pp 503-506. When these amounts, designated D, E, H and I, in the trial court's opinion, are subtracted from the proper award, a proper damage award of $7,746 results.

The court's damage award was under the $10,000 amount-in-controversy jurisdictional limitation. We must determine whether the district court had jurisdiction to grant a total award greater than $10,000. Case law, Michigan and national, on this issue is sparse. Defendant argues that *Zimmer, supra,* voids any judgment in excess of the jurisdictional amount. That interpretation of *Zimmer* is too broad and fails to take into account the facts of that case. The amount sought and the damages awarded in *Zimmer* were greater than the amount the justice of the peace had jurisdiction over. We conclude that *Zimmer* stands for the proposition that a damage award in excess of the jurisdictional amount is void. A valid damage award may be combined with costs, attorney fees and interest to exceed the jurisdictional amount without rendering the excess amount void or depriving the district court of jurisdiction.

The Court is cognizant of the accumulative nature of fees, costs and interest which, to a great extent, are controlled by the defendant's actions. A

defendant who refuses to make timely payments should not be allowed to circumvent the district court's jurisdiction by delaying and increasing the interest charges, thereby yielding a total award greater than $10,000. The decision reached by this Court is both logical and fair.

In this case, the district court items A, D, E, G, H and I are affirmed. The award for the other items is vacated.

No costs, a statutory interpretation being involved.

Affirmed in part and vacated in part.


S. Everett, J. *(concurring in part, dissenting in part).* I concur with the majority opinion with one exception. I believe that the loss of income from the profit-sharing plan comes within the statutory definition of work loss. It should be noted that this is not a claim for the loss of profits arising out of a capital investment or a combination of that and work. Rather, it is a claim for loss of regular quarterly payments made to the employee by the employer out of the latter's profits. Obviously, if there were no profits, there would be no payment, but in this case it is undisputed that had the plaintiff not been injured, she would have received the sum of $4,784 from this source.

In *Coates v Michigan Mutual Ins Co,* 105 Mich App 290; 306 NW2d 484 (1981), this Court included as work loss net income which would have been received by a truck driver for the lease of his truck, which he was required to provide under the terms of his employment. I believe the loss of income from work by the plaintiff in this case is even a clearer example of work loss and, therefore, believe that she is entitled to be reimbursed for 85% of that loss.