## ROTH v CADILLAC INSURANCE COMPANY

Docket No. 67512. Submitted May 3, 1983, at Lansing.—Decided
October 10, 1983. Leave to appeal applied for.

Alan K. Roth was injured in an automobile accident and was
unable to work for several months. His insurer, Cadillac Insur-
ance Company, paid no-fault work-loss benefits. Upon his re-
turn to work, Roth was immediately laid off due to economic
conditions. He did not qualify for unemployment benefits or
trade readjustment allowance benefits because, due to his inju-
ries, he had not worked the requisite number of weeks prior to
the layoff. Roth brought an action against Cadillac Insurance
seeking payment of those benefits, which he would have re-
ceived had he not been injured and had worked, as work-loss
benefits under the insurance policy. The Saginaw Circuit Court,
Hazen R. Armstrong, J., held that work-loss benefits were not
payable for loss of "benefits to which an employee might be
entitled when he is not working" and entered judgment for
defendant. Plaintiff appealed. *Held:*

The unemployment and trade readjustment benefits are not
the type of benefits which were in the contemplation of the
Legislature when the no-fault provision was enacted. Applica-
tion of the plaintiff's argument that he would have been
eligible for the benefits "but for" the accident would allow
reimbursement beyond that contemplated. The trial court did
not err in denying those benefits.

Affirmed.

D. F. WALSH, J., dissented. He would hold that, because a
worker earns his unemployment and trade readjustment bene-
fits by working during the qualifying weeks, the entitlement to
those benefits is a part of the compensation the plaintiff would
have received had he been able to work. Therefore, he had a
right to work-loss benefits representing the income he would
have received from unemployment and trade readjustment
benefits because of the layoff. Judge Walsh would reverse.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobile Insurance § 361.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — WORK LOSS — UNEMPLOY-
   MENT COMPENSATION — TRADE READJUSTMENT ALLOWANCE.

   Unemployment compensation benefits and trade readjustment
   allowance benefits for which an employee injured in an auto-
   mobile accident did not qualify when laid off from his employ-
   ment after returning to work, because his injuries prevented
   him from working the requisite number of weeks prior to the
   layoff, are not "work loss" benefits payable to the injured
   person pursuant to the automobile no-fault insurance act (MCL
   500.3107[b]; MSA 24.13107[b]).

DISSENT BY D. F. WALSH, J.

2. INSURANCE — NO-FAULT INSURANCE — WORK LOSS — UNEMPLOY-
   MENT COMPENSATION — TRADE READJUSTMENT ALLOWANCE.

   *Unemployment compensation benefits and trade readjustment
   allowance benefits for which an employee injured in an auto-
   mobile accident did not qualify when laid off from his employ-
   ment after returning to work, because his injuries prevented
   him from working the requisite number of weeks prior to the
   layoff, are "work loss" benefits payable to the injured person
   pursuant to the automobile no-fault insurance act because the
   entitlement to such benefits is a part of the compensation the
   employee would have received had he been able to work (MCL
   500.3107[b]; MSA 24.13107[b]).*

*Hauffe, Lawler, O'Grady & Geyer* (by *Thomas J. Lawler),* for plaintiff.

*McGraw & Borchard, P.C.* (by *Michael C. Weiss),* for defendant.

Before: ALLEN, P.J., and R. B. BURNS and D. F. WALSH, JJ.

ALLEN, P.J. Are unemployment compensation and trade readjustment benefits, for which plaintiff did not qualify because he had not worked the required number of weeks during the preceding year due to injuries he received in an automobile accident, "work loss" benefits which plaintiff may recover under MCL 500.3107(b); MSA 24.13107(b)

of the Michigan no-fault insurance act? The trial court held that "work loss" benefits "are payable only for loss of income from work which the injured person would have performed, not, however, for benefits to which an employee might be entitled when he is not working" and on October 6, 1982, entered judgment for defendant. From said judgment, plaintiff appeals of right. The question presented is of first impression. We affirm.

The case was submitted to the trial court on a stipulated statement of facts, the relevant portions of which are set forth herein. Plaintiff was injured in an automobile accident March 6, 1979, as a result of which he was unable to work at his job in the Chevrolet Motor Division in Saginaw until January 28, 1980.[1] During the period of his unemployment he was fully reimbursed by defendant insurer for all medical expenses and lost wages. On the day plaintiff returned to work, January 28, 1980, he was laid off due to general economic conditions and their adverse effect on plaintiff's employer. Plaintiff's layoff was not attributable to the automobile accident. Had plaintiff not been involved in the automobile accident, he would have been laid off on December 10, 1979, due to economic conditions.

Because a minimum of 14 weeks must be worked during the calendar year preceding claimant's actual layoff (January 28, 1979, to January 28, 1980) in order to qualify for unemployment compensation benefits, it was stipulated that plaintiff did not qualify for unemployment benefits. Likewise, because he had not worked a minimum

[1] During the period of convalescence, plaintiff was twice cleared for work in a janitor classification and attempted to perform such assignment. However, due to a fall because of injuries to his eyes in the automobile accident, plaintiff's employment as a janitor was of brief duration, and in no way is relevant to decision in the instant case.

of 26 weeks, plaintiff was not eligible to receive trade readjustment allowance (TRA) benefits. Other employees who were laid off for economic reasons and who had worked the required number of weeks received such benefits. It was also stipulated that had plaintiff not been injured in the automobile accident on March 6, 1979, and had he been working from that date through December 10, 1979, he would have been eligible to receive unemployment compensation and TRA benefits totalling $13,703. Plaintiff filed suit in circuit court for 85% of $13,703, *viz.:* $11,647.55, plus 12% (MCL 500.3142; MSA 24.13142), together with interest from the date of filing the complaint (MCL 600.6013; MSA 27A.6013), and attorney fees (MCL 500.3148; MSA 24.13148). On September 22, 1982, the trial judge issued a written opinion denying such benefits but recognizing that there was no case law on the exact issue presented.

The controlling statutory provision is MCL 500.3107(b); MSA 24.13107(b), which reads as follows:

"(b) *Work loss consisting of loss of income from work an injured person would have performed* during the first 3 years after the date of the accident *if he had not been injured* and expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefits of himself or of his dependent. Work loss does not include any loss after the date on which the injured person dies. Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his claim reasonable proof of a lower value of the

income tax advantage in his case, in which case the lower value shall apply. The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. The maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner but any change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum." (Emphasis supplied.)

This provision has been interpreted by this Court in three opinions with somewhat conflicting results. *Krawczyk v DAIIE,* 117 Mich App 155; 323 NW2d 633 (1982); *Farquharson v Travelers Ins Co,* 121 Mich App 766; 329 NW2d 484 (1982); *Kruzel v DAIIE,* 128 Mich App 35; 339 NW2d 720 (1983). In *Krawczyk,* the employee was denied recovery of $390 in health insurance premiums paid by him while unable to work, $4,066 in profit-sharing otherwise due from a profit-sharing plan, and $510 in pension benefits. The Court allowed recovery of interest at 12% on payments which, under the act, were overdue and for attorney fees.[2]

In *Farquharson,* a different panel of this Court was asked to determine whether: (a) the employer's contribution to a pension plan, (b) payment of health insurance premiums, and (c) the employer's federal Social Security tax paid on plaintiff's wages, were "work loss" benefits recoverable under the statute. The panel was also asked to decide whether the trial court erred in disallowing recovery of interest under the no-fault act and attorney

[2] One member of the *Krawczyk* panel (visiting Judge Stanley Everett) disagreed with the majority on the question of profit-sharing. He believed that the profit-sharing plan falls within the definition of "work loss".

fees. Disagreeing with *Krawczyk,* the panel held
that items (a) and (b) were recoverable "work loss"
benefits but that Social Security benefits were "not
'income' to the employee under § 3107(b)". 121
Mich App 775. However, the panel agreed with
*Krawczyk* that interest at 12% and attorney fees
were recoverable.

*Kruzel* raised the narrow issue of whether the
amount which the employer was paying for an
employee's hospitalization insurance policy but
which was paid by the employee during the period
he could not work because of injuries sustained in
an automobile accident was a "work loss" benefit
under § 3107(b). The *Kruzel* panel concluded that
health insurance coverage was a fringe benefit
included within the term "wage loss".

"In our opinion, *Farquharson* is the better reasoned
opinion. We do not believe the Legislature intended to
exclude fringe benefits from 'work loss' benefits. Fringe
benefits are a form of income payable in kind rather
than in cash. If fringe benefits paid by the employer are
excluded under § 3107(b), an employee who receives the
cash equivalent of the benefit and buys his or her
health insurance would be entitled to reimbursement,
but plaintiff, and all others like her, would not. This is
an unreasonable result and one which we do not believe
the Legislature intended. Furthermore, excluding em-
ployer paid 'fringe benefits' from the ambit of 'work
loss' would be inconsistent with the broad policy objec-
tives of the no-fault statute.

"Accordingly, we conclude that hospitalization pre-
mium payments normally paid by the employer consti-
tute a 'loss of income from work' and are reimbursable
under § 3107(b)."

Plaintiff first argues that under the reasoning
set forth by Judge (now Justice) CAVANAGH in
*Nawrocki v Hawkeye Security Ins Co,* 83 Mich

App 135; 268 NW2d 317 (1978), plaintiff is entitled
to recover. We disagree. That case involved the
question of whether plaintiff could recover wages
lost when, upon recovering from injuries sustained
in an automobile accident, plaintiff was not re-
hired because his employer had filled the position
with another employee. Clearly, § 3107(b) pertains
to lost wages. The issue in the instant case is
entirely different, *viz.:* does § 3107(b) include un-
employment compensation and trade readjustment
benefits. Furthermore, there was no question but
that Nawrocki lost his job because of his acciden-
tal injuries, whereas in the instant case plaintiff's
post-disability layoff was due to general economic
conditions totally unrelated to the automobile acci-
dent or the injuries sustained therein.

Plaintiff next argues that "but for" the automo-
bile accident plaintiff would have been able to
work the necessary number of weeks required to
qualify him for both unemployment and trade
readjustment benefits. However, the "but for" test
is more valid as a test of exclusion than as a test
of inclusion. 2 Harper & James, The Law of Torts,
p 1110; Smith, *Legal Cause in Actions of Tort,* 25
Harv L Rev 103 (1911). Furthermore, the basic
issue presented here is not one of causation but
one of statutory construction: did the Legislature
in enacting § 3107(a) intend that it cover benefits
such as unemployment compensation and TRA
benefits. We don't think the Legislature intended
so broad a coverage.

We do not perceive unemployment compensation
and TRA benefits to be "fringe benefits" as that
term is commonly understood. *Farquharson* and
*Kruzel, supra,* construed § 3107(a) as permitting
recovery of fringe benefits paid by the employer.
Fringe benefits were defined as "a form of income

payable in kind rather than in cash". Unemployment compensation is not paid "in kind" but in cash. Furthermore, it is paid by the government although the employer indirectly pays a portion thereof. Similarly, TRA benefits are government paid and clearly are not employer-type fringe benefits.

While we sympathize with the plaintiff in this instance, we believe imposition of "but for" causation would open § 3107(b) to reimbursement far beyond that contemplated by the Legislature when the statute was first enacted. If change is to be made, it should be made by the Legislature and not by this Court.

Affirmed. No costs, a question of public importance being involved.

R. B. BURNS, J., concurred.

D. F. WALSH, J. *(dissenting).* I must respectfully dissent. In my judgment the result reached by the majority is unfair to the plaintiff, contrary to the intent and policy of the no-fault legislation and not mandated by the language of the pertinent statutory provision.

MCL 500.3107(b); MSA 24.13107(b) provides that "work loss" consists of "loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured". It seems to me that the whole concept of qualifying weeks in the Employment Security Act, MCL 421.1 *et seq.;* MSA 17.501 *et seq.,* and the Trade Act of 1974, 19 USC 2101 *et seq.,* is that the employee earns his unemployment compensation and trade readjustment allowance benefits by the work he performs during the qualifying weeks. Therefore, part of the compensation plaintiff would have received for work he would

have performed in the months he was disabled as a result of the accident was entitlement to unemployment and trade readjustment benefits should future economic conditions require layoff. Since he was unable to earn his entitlement to this unemployment income by virtue of the fact that his injuries prevented him from working during the qualifying weeks, he had a right to work-loss benefits in the amount of the income he would otherwise have received as a result of his enforced layoff.

I would reverse.