COATES v MICHIGAN MUTUAL INSURANCE COMPANY

Docket No. 52780. Submitted March 4, 1981, at Grand Rapids.—
Decided April 9, 1981.

Michael Coates, the owner-driver of a semi truck, was injured and
his truck was damaged in a collision. Coates was employed
under an arrangement by which he was paid both a daily wage
and a rental payment for the use he made of his truck on
behalf of his employer. He was physically unable to work for
about three months and thereafter, because his truck had not
been repaired satisfactorily, he sold the truck. He did not
obtain another truck or return to work for another eight
months. Coates brought an action against his insurer, Michigan
Mutual Insurance Company, for work-loss benefits for the loss
of wages and truck rentals from the time of the accident until
he returned to work. The Muskegon Circuit Court, John H.
Piercey, J., granted Coates partial summary judgment, ordering
the insurer to pay wage-loss benefits, less workers' compensa-
tion paid, for the period during which Coates was physically
disabled. Partial summary judgment was granted to the in-
surer, the court finding that Coates was not entitled to lost
rental income and not entitled to any benefits for the period
after he became physically able to return to work. Coates
appeals. *Held:*

1. The statute governing work-loss benefits is not restricted to
lost "wages", therefore the claim for the recovery of rental
payments is not clearly unenforceable, nor can it be said that
there was no genuine issue of fact regarding the rental pay-
ments. Summary judgment, therefore, was not proper as to this
issue. The lost rental was lost income from work that Coates
would have performed had he not been injured, to the extent it
exceeded his cost of operation. A remand is necessary for a
determination of the amount of benefits recoverable for the
period of time during which he was physically disabled.

2. The plaintiff is not entitled to benefits for the period of

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 7 Am Jur 2d (Rev), Automobile Insurance § 361.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.
[2] 73 Am Jur 2d, Summary Judgment § 37.

time from the end of his disability until he returned to work. The work lost during that time was not the direct consequence of plaintiff's injury. That portion of the summary judgment in favor of the insurer is affirmed.

Affirmed in part, reversed in part and remanded.

1. INSURANCE — NO-FAULT INSURANCE — INCOME LOSS — STATUTES.

   Normally, an injured person's loss of investment earnings is not recoverable under the income-loss benefit provision of the no-fault automobile insurance statute because the investor's personal injury has no causal connection with his loss of investment earnings (MCL 500.3107[b]; MSA 24.13107[b]).

2. JUDGMENTS — SUMMARY JUDGMENT.

   A court, in deciding whether a defendant is entitled to summary judgment on the grounds that the plaintiff has not stated a claim upon which relief can be granted, is to look solely to the pleadings and, accepting the plaintiff's allegations as true, determine whether the plaintiff's claim is so clearly unenforceable as a matter of law that no factual development could possibly sustain it (GCR 1963, 117.2[1]).

3. INSURANCE — NO-FAULT INSURANCE — INCOME LOSS — STATUTES.

   An injured truck owner-driver's claim for the recovery of rental payments as a portion of income-loss benefits under the no-fault insurance statute was not clearly unenforceable, and thus summary judgment in favor of the defendant insurer was improper.

4. INSURANCE — NO-FAULT INSURANCE — WORK-LOSS BENEFITS.

   An injured truck owner-driver was not entitled to no-fault income-loss benefits for a period of time after he had recovered from his physical disability and would have been able to work but did not do so because his truck was not operable and he had no truck available to him; work-loss benefits are payable for the loss of income an injured person would have received but for the injury, and not but for the accident.

*Landman, Luyendyk, Latimer, Clink & Robb* (by *Jon D. Vander Ploeg*), for plaintiff.

*Baxter & Hammond* (by *Michael D. Wade*), for defendant.

Before: R. B. BURNS, P.J., and T. M. BURNS and CYNAR, JJ.

R. B. BURNS, P.J. Plaintiff brought this action seeking loss-of-income benefits from his no-fault automobile insurer. The trial court entered partial summary judgment in favor of plaintiff and partial summary judgment in favor of defendant. Plaintiff appeals.

In November of 1976, plaintiff, while in the course of his employment as a truck driver for Central Transport Company, was involved in a motor vehicle accident in which he suffered personal injuries and his semi truck was damaged. Plaintiff's physical injuries prevented his returning to work until February of 1977. Plaintiff received workers' compensation benefits from November of 1976 through February of 1977.

Plaintiff worked under the same arrangement with Central Transport as did all its drivers. Plaintiff owned his own semi truck and leased it to the company. He received payment based primarily on a mileage rate. The payment was broken down so that each week plaintiff received two paychecks, one reflecting a "wage" rate of $65 or $75 per day, and the other representing rental payments for the use he made of the truck on behalf of Central Transport. In order to work for Central Transport, a driver had to own his truck since it would have been economically prohibitive for a driver to lease a truck himself and then lease it to Central Transport. Thus, until plaintiff's truck was repaired or he had purchased another, he was unable to return to work. The repairs to plaintiff's truck were completed by March of 1977, but plaintiff felt that the truck was not put in a condition to be operated safely, and so he sold it to the repair facility. Plaintiff did not purchase another truck until

November of 1977, and it was not until that time that plaintiff actually returned to work.

Plaintiff claims that, pursuant to MCL 500.3107; MSA 24.13107, he is entitled to loss-of-income benefits from the time of the accident to the time he purchased another truck and was able to return to work and that the rental payments he normally received should be included in determining the amount of benefits payable. The trial court granted plaintiff partial summary judgment and directed defendant to pay loss-of-wage benefits for the period from November, 1976, through February, 1977, with appropriate deductions for workers' compensation benefits paid. The trial court granted defendant partial summary judgment, finding that plaintiff was not entitled to have the lost rental income from the lease of his truck to Central Transport included in the amount of work-loss benefits owed, and also finding that defendant was not liable for any work-loss amounts that accrued after plaintiff became physically able to return to work in February of 1977.

Under the no-fault act, personal protection insurance benefits are payable for "loss of income from work an injured person would have performed * * * if he had not been injured". MCL 500.3107(b); MSA 24.13107(b).[1] It is plaintiff's posi-

---

[1] MCL 500.3107(b); MSA 24.13107(b) reads in full:

"Personal protection insurance benefits are payable for the following:

* * *

"(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured and expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or of his dependent. Work loss does not include any loss after the date

tion that benefits under § 3107(b) are not limited to lost wages, but include loss of income which would have been earned had it not been for the accident. Thus, plaintiff argues, since the accident prevented him from driving his truck, the loss of rental payments which he normally received for operating the truck on behalf of his employer should have been considered in determining the benefits payable.

The language of § 3107(b) would appear to preclude benefits for the loss of income consisting of return on the investment of capital, as opposed to income generated from a person's endeavors, skill, and attention. See *Zyck v Hartford Ins Group,* 143 NJ Super 580; 364 A2d 32 (1976), *rev'd in part, aff'd in part* 150 NJ Super 431; 375 A2d 1232 (1977). As indicated in *Pries v Travelers Ins Co,* 86 Mich App 221; 272 NW2d 247 (1978), *aff'd* 408 Mich 870 (1980), § 3107(b) was drawn from the Uniform Motor Vehicle Accident Reparations Act, 14 ULA (Master ed), p 48 *et seq.* Section 1(a)(5)(ii) of that act provides that:

"(ii) 'Work loss' means loss of income from work the injured person would have performed if he had not been injured, and expenses reasonably incurred by him on which the injured person dies. Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his claim reasonable proof of a lower value of the income tax advantage in his case, in which case the lower value shall apply. The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. The maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner but any change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum."

in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him or by income he would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake."

The commissioners' comments in regard to the above section are as follows:

"Work loss includes not only lost wages, but *lost profit which is attributable to personal effort in self-employment* (as distinguished from profit attributable to investment) * * *. Finally, the definition contains an explicit reference to the doctrine of avoidable consequences—work loss is computed by subtracting not only income from work which the injured person undertook in lieu of that which his injury prevented him from performing but also income which he might have earned in available appropriate substitute work. As under the common law doctrine of avoidable consequences, *the issue is whether claimed work loss is justly attributable to the injury.* Subtraction of potential income from alternate work which the injured person declines is proper only where, under all the circumstances, the alternate work is 'appropriate' and the injured person's refusal to undertake the work is 'unreasonable'." (Emphasis added.)

As is evident from the above-quoted material, because in the usual situation an investor's personal injury has no causal connection with his loss of investment earnings, such a loss is normally not recoverable under § 3107(b). However, plaintiff's situation in the present case, in regard to the "rental" income from the lease of his semi truck when using it on behalf of his employer, falls somewhere between pure return on a capital investment and income from self-employed personal effort.

In *Mire v Timmons*, 155 So 2d 265 (La App, 1963), two trucks had collided and the owner of one truck sued the owner of the other and his insurer in a tort action for loss of earnings. The plaintiff's employer split his pay between wages for driving the truck and "rental" for the use of the truck on a daily contract basis. The court found that the plaintiff was being paid the total amount each week for labor he performed with his truck. It accordingly held that the trial court's award for loss of earnings properly included the amount earned from the plaintiff's use of his own truck as well as his wages as the driver. See also 4 Restatement Torts, 2d, § 924, pp 523-527, 45 ALR3d 345, 352-353, 411-415.

In the case at bar plaintiff alleged, in his second amended complaint, that he experienced a loss of earnings in excess of $1,000 per month due to his injury. Defendant, in its answer, set forth the affirmative defense that at least part of plaintiff's claim for lost "wages" was based upon the loss of use of his truck. Defendant moved for summary judgment, pursuant to GCR 1963, 117.2(1), on the ground that plaintiff had not stated a claim upon which relief could be granted. In deciding whether defendant was entitled to summary judgment, the court was bound to look solely to the pleadings and, accepting plaintiff's allegations as true, determine whether plaintiff's claim was so clearly unenforceable as a matter of law that no factual development could possibly sustain it. *Gartside v Young Men's Christian Ass'n*, 87 Mich App 335; 274 NW2d 58 (1978). Since the statute governing work-loss benefits is not restricted to lost "wages", we conclude that plaintiff's claim for the recovery of the rental payments is not clearly unenforceable.

Furthermore, even had defendant brought its motion under GCR 1963, 117.2(3), summary judgment would be improper since we cannot say that there is no genuine issue of fact as to whether or not at least part of the truck rental payments that plaintiff was unable to earn was recoverable as lost income from work under § 3107(b). Plaintiff's "rental" income in the present case bears much similarity to income from self-employed personal effort. Although plaintiff had obviously invested capital in the truck, he received rental payments only if he drove the truck on behalf of Central Transport. In addition, the amount of the rental payments was based primarily on the mileage driven and the weight of the load carried on behalf of Central Transport. If plaintiff had been injured, but the truck had remained in perfect running order, the rental payments to him would have nonetheless ceased. Thus this situation is distinguishable from the normal investment situation wherein injury to the investor has no causal relationship to the flow of investment income.

It is our opinion that the lost "rental" income in the present case represents lost income from work plaintiff would have performed if he had not been injured, but only to the extent it would have exceeded his costs of operating the truck on behalf of Central Transport. We therefore remand to the trial court to afford the parties an opportunity to present proofs regarding plaintiff's expected depreciation costs and expenses of operating the truck, which costs must then be subtracted from plaintiff's expected "rental" income, had he not been injured, in computing the benefits recoverable under § 3107(b).

Plaintiff further claims he is entitled to work-

loss benefits not only for the period of his physical disability—November, 1976, through February, 1977—but also for the additional period he was unable to return to work because he had no truck available. We disagree. Work-loss benefits are payable for the loss of income an "injured person" would have received, but for the "injury", and not, as plaintiff argues, but for the "accident". The simplest illustration is that had plaintiff not been injured in the accident he would not have been entitled to any benefits whatsoever under § 3107(b), even if his return to work had been prevented by the total destruction of his truck.

The case of *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135; 268 NW2d 317 (1978), is distinguishable. In that case the trial court had ordered payment of benefits after the period of disability where the insured had been injured in a motor vehicle accident and, upon his inability to return to work, his employer had replaced him. When the insured did become able to return to work, there was no job available for him. Thus the insured's work loss was a direct consequence of his physical injury; if the insured had not been injured, he would have been able to return to work and would not have been replaced. In the present case, the work lost between February, 1977, and November, 1977, was not the direct consequence of plaintiff's injury, but resulted from his decision, however valid, to replace his truck because he felt it was not safely operable. Plaintiff suffered a loss of income because he had no truck available to him. However, this is not a loss covered by § 3107(b) of the no-fault act. We affirm that part of the trial court's summary judgment decision in favor of defendant in this regard.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.