MARQUIS v HARTFORD ACCIDENT & INDEMNITY (ON
REMAND)

Docket No. 133472. Submitted February 2, 1992, at Lansing. Decided
August 3, 1992, at 9:30 A.M. Leave to appeal sought.

Marie Marquis brought an action in the 72nd District Court
against Hartford Accident & Indemnity, seeking work-loss ben-
efits under a policy of no-fault automobile insurance. The
defendant had paid benefits for the period that the plaintiff was
unable to return to work after an accident. After her employer
permanently replaced her, the plaintiff secured other employ-
ment at a lower rate of compensation and remained at that job
until she quit two months later. The plaintiff sought work-loss
benefits for the period of postaccident employment in an
amount representing eighty-five percent of the difference in the
compensation levels of her jobs and for the following period of
unemployment. The court, Richard A. Cooley, Jr., J., granted
summary disposition for the defendant. The St. Clair Circuit
Court, Ernest F. Oppliger, J., affirmed the denial of work-loss
benefits for the period after the plaintiff quit employment, but
reversed the denial of differential benefits for the period when
she was employed after the accident. The Court of Appeals
denied the plaintiff leave to appeal. The Supreme Court, in lieu
of granting leave, remanded for consideration as on leave
granted. 436 Mich 866 (1990). The defendant cross appealed.

On remand, the Court of Appeals *held:*

The circuit court correctly held the defendant responsible for
eighty-five percent of the wage differential after the plaintiff
returned to work, but it erred in denying benefits for the period
after the plaintiff quit employment.

Work-loss benefits under the no-fault act are payable only for
loss of actual income caused by injury in an automobile acci-
dent. In this case, the plaintiff's injury in an automobile acci-
dent led to a reduction in income when she was forced to take
a lower-paying job. A continuation of work-loss benefits based

REFERENCES

Am Jur 2d, Automobile Insurance § 361.

See the Index to Annotations under Automobile Insurance; No-.
Fault Insurance.

on the pay differential will not reward the plaintiff for quitting employment. These benefits are for wage loss suffered as a result of her injury in the automobile accident, and they continue regardless of whether she kept the new job.

Affirmed in part and reversed in part.

GRIFFIN, J., dissenting, stated that work-loss benefits are payable for loss of actual income only and that the lower courts correctly ruled that, by removing herself from the work force, the plaintiff suffered a loss of earning capacity, which is not compensable under the no-fault act.

INSURANCE — NO-FAULT — WORK LOSS.

Work-loss benefits under no-fault automobile insurance are payable for loss of actual income caused by injury in an automobile accident; a person who, because of injury in an automobile accident, loses a job held before the accident, acquires a new job at a lower rate of compensation, and subsequently voluntarily quits the new job suffers a loss of income in the amount of the difference in compensation levels of the two jobs and is entitled to work-loss benefits based on that difference both during employment at the new job and after becoming voluntarily unemployed (MCL 500.3107[b]; MSA 24.13107[b]).

*McNamee, Rowling, Streeter & Partipilo, P.C.* (by *Nancy Bates Rickel*), for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe* and *Anne M. McLaughlin*), for the defendant.

ON REMAND

Before: HOLBROOK, JR., P.J., and GRIFFIN and MARILYN KELLY, JJ.

MARILYN KELLY, J. This matter is before us on remand from the Supreme Court for consideration as on leave granted. 436 Mich 866 (1990). Plaintiff appeals and defendant cross appeals from an order of the St. Clair Circuit Court which affirmed in part and reversed in part the judgment of the district court.

Plaintiff argues that the circuit court erred by denying no-fault automobile insurance work-loss benefits to her after she voluntarily quit her job. In its cross appeal, defendant argues that the court erred in allowing plaintiff work-loss benefits after she resumed employment. We reverse that portion of the circuit court order denying plaintiff all work-loss benefits after she became voluntarily unemployed and affirm the remainder of the order.

On November 16, 1985, plaintiff was injured in an automobile accident which disabled her from her employment. When she was medically released to return to work on March 6, 1986, a permanent replacement had filled her position with her original employer. Plaintiff received no-fault work-loss benefits until she began work for a new employer on September 1, 1986. Her wages in the new position were, on average, $233.60 lower per week than those paid by her former employer. Within two months, plaintiff became dissatisfied with her new job and voluntarily resigned.

Plaintiff argued below that defendant, the no-fault insurance carrier, was liable for eighty-five percent of her wage differential. The differential is the spread between her earnings at her former employment and those at her new employment the two months she worked there and while she was voluntarily unemployed. See MCL 500.3107(b); MSA 24.13107(b). The district court ruled that defendant was responsible for no work-loss benefits after plaintiff commenced her second job. The circuit court reversed and held defendant responsible for eighty-five percent of the wage differential after plaintiff returned to work. We affirm that ruling. However, the circuit court went on to refuse to make defendant responsible for any work-loss benefits after plaintiff became voluntarily unemployed. With that holding, we disagree.

The question here is not whether plaintiff should have the same work-loss benefits after she voluntarily quit her new job as she received before she began it. She should not. At issue is whether plaintiff should have the same benefits after she quit as she was entitled to while working the second job. Those benefits are based solely on the difference between what plaintiff was paid before the accident and what she was paid in her new job.

The no-fault insurance act defines "work loss" personal protection insurance as:

Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured . . . . [MCL 500.3107(b); MSA 24.13107(b).]

"Work loss" includes actual loss of income. It does not include loss of earning capacity. *Ouellette v Kenealy,* 424 Mich 83; 378 NW2d 470 (1985). Here, the circuit court ruled that after plaintiff chose to become voluntarily unemployed, her "work-loss" claim was for loss of earning capacity rather than for loss of actual earnings. We disagree. *Quellette* quite clearly distinguishes the earning capacity loss involved there with a wage loss, which is what plaintiff suffered in the case before us.

Work-loss benefits are payable only for loss of actual income caused by automobile accident injuries. We recognize that subsequent events which are independent and intervening may break the necessary chain of causation. See *Smith v League General Ins Co,* 143 Mich App 112; 371 NW2d 491 (1985), rev'd 424 Mich 893 (1986); *MacDonald v State Farm Mutual Ins Co,* 419 Mich 146; 350

NW2d 233 (1984); *Luberda v Farm Bureau General Ins Co,* 163 Mich App 457; 415 NW2d 245 (1987); *Coates v Michigan Mutual Ins Co,* 105 Mich App 290; 306 NW2d 484 (1981).

In this case, unlike *MacDonald, Smith* and *Luberda,* no independent and intervening event broke the chain of causation. By contrast, in *MacDonald,* the plaintiff had a heart attack which was unrelated to the accident-related injuries. In *Smith* and *Luberda,* it was the plaintiffs' subsequent incarcerations that prevented them from working. In each of these cases, the plaintiffs would have earned no wages after the intervening events, even had the automobile accidents and resultant injuries never occurred. See *Ouellette, supra.*

Although *Coates* involved a claim for work-loss benefits, it too is distinguishable from this case. *Coates,* 297-298. *Coates* held that work-loss benefits are for loss of income an injured person would have received but for the "injury" and not, as the plaintiff argued, but for the "accident." *Id.,* 298. The plaintiff in *Coates* suffered loss of income because of damage to his truck caused by the accident, not because of injuries sustained.

Our decision in this case, to continue benefits based on the pay differential, does not reward plaintiff for quitting; it also does not reward defendant for the happenstance that plaintiff's new job did not work out. Furthermore, it implicitly recognizes that plaintiff was forced to take the new job because of accident-related injuries. The benefits which plaintiff is eligible for are those which resulted from wage loss due to her injuries and which continued regardless of whether she kept the new job.

We find no basis to deny plaintiff no-fault work-loss benefits for pay loss suffered because of her accident-related injuries, reduced by the wages she

would have earned. Moreover, based on our analysis of this claim, we find no merit to defendant's cross appeal.

Affirmed in part, reversed in part.

HOLBROOK, JR., P.J., concurred.

GRIFFIN, J. *(dissenting)*. I respectfully dissent. It is well settled that "work loss" as provided by the no-fault act refers to loss of actual income and not to loss of earning capacity. *Ouellette v Kenealy,* 424 Mich 83; 378 NW2d 470 (1985). The no-fault act defines work-loss personal protection insurance as follows:

> Work loss consisting of *loss of income* from work an injured person *would have* performed during the first 3 years after the date of the accident if he had not been injured . . . . [MCL 500.3107(b); MSA 24.13107(b). Emphasis added.]

In the present case, the majority has confused loss of earning capacity and loss of actual earnings. In *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135, 141-142; 268 NW2d 317 (1978), Judge (now Chief Justice) MICHAEL F. CAVANAGH noted that the distinction between the loss of earning capacity and the loss of actual income is the difference between what a claimant "could have" earned and "would have" earned. Further, the no-fault act provides recovery for only the latter:

> First, we note that the cases which discuss earning capacity damages stress repeatedly that plaintiff's right is to recover not what he would have earned but what he could have earned. *Prince v Lott, supra,* 369 Mich at 610; 120 NW2d at 782, *Lorenz v Sowle, supra,* 360 Mich at 555; 104 NW2d

at 349-350, *Coger v Mackinaw Products Co,* 48 Mich App 113, 125; 210 NW2d 124, 130 (1973). This contrasts sharply with the language of the statute before us: "benefits are payable for . . . loss of income from work an injured person *would* have performed . . . ." Giving this language the plain meaning which we must, it seems evident to us that the statute is not an enactment of the common-law rule. [Emphasis in original. 83 Mich App 141-142.]

The circuit court ruled below that after plaintiff chose to become voluntarily unemployed,[1] her work-loss claim was for loss of earning capacity rather than for loss of actual earnings. I agree and would hold that once plaintiff removed herself from the work force, the only damages she suffered were for loss of earning capacity. Consequently, because the no-fault act does not allow recovery of such damages, I would hold that a claimant is not entitled to no-fault work-loss benefits during time periods that the claimant voluntarily chooses not to work.

Our decisions have repeatedly held that work-loss benefits are payable only for loss of actual income caused by an automobile accident injury. Subsequent events that are independent and intervening may break the necessary chain of causation. In *MacDonald v State Farm Mutual Ins Co,* 419 Mich 146; 350 NW2d 233 (1984), our Supreme Court held that a claimant's unrelated heart attack was a subsequent and intervening event that terminated the no-fault carrier's liability for work-loss benefits. The Supreme Court has summarized its holding in *MacDonald* as follows:

---

[1] Plaintiff's brief contains the following admission:

Plaintiff-appellant's subsequent employment was for a period of approximately six weeks, when she voluntarily quit. Plaintiff-appellant admits that since she voluntarily quit her employment, she has failed to mitigate her damages.

In *MacDonald v State Farm Mutual Ins Co,* 419 Mich 146; 350 NW2d 233 (1984), this Court held that where a person suffers an unrelated injury, a heart attack, after an automobile accident and is rendered unable to work, eligibility for work-loss benefits ceases *because no income would have been earned even if the accident had not occurred.* [*Ouellette, supra* at 86. Emphasis added.]

Further, the incarceration of a claimant following a criminal conviction is also an independent and intervening event that breaks the causal connection necessary for the payment of no-fault work-loss benefits. *Smith v League General Ins Co,* 143 Mich App 112; 371 NW2d 491 (1985), rev'd 424 Mich 893 (1986); *Luberda v Farm Bureau General Ins Co,* 163 Mich App 457; 154 NW2d 245 (1987). Under such circumstances, the no-fault carrier is not responsible for work-loss benefits during the period of incarceration because an event unrelated to the automobile accident removed the claimant from the work force.

In this case, like in *Coates v Michigan Mutual Ins Co,* 105 Mich App 290; 306 NW2d 484 (1981), a decision by the plaintiff, not the automobile accident, controls plaintiff's income level. Plaintiff's decision not to work is a cause independent and intervening from the accident. Under such circumstances, "[plaintiff's] eligibility for work-loss benefits ceases because no income would have been earned even if the accident had not occurred." *Ouellette, supra* at 86.

Finally, I note that such a construction of the no-fault statute is consistent with the judicially created favored-work doctrine that we have repeatedly applied in the context of the Workers' Disability Compensation Act. In a factually similar case, *Coon v Rycenga Homes,* 146 Mich App 262; 379 NW2d 480 (1985), we held that a workers' compen-

sation carrier is not liable for a wage differential during the time that a partially disabled employee unreasonably refuses favored work. In *Coon,* we rejected the petitioner's argument that a carrier is responsible for the differential between the wage of his former employment and that of his favored work. Rather, we held that when favored work is unreasonably refused, "plaintiff has forfeited his entitlement to *all* workers' compensation benefits." *Id.* at 267. (Emphasis added.)

For these reasons, I respectfully dissent and would affirm.