BROWN v HOME-OWNERS INSURANCE COMPANY

Docket No. 307458. Submitted November 15, 2012, at Lansing. Decided December 4, 2012, at 9:05 a.m. Leave to appeal denied, 493 Mich 970.

Barry C. Brown filed an action in the Ingham Circuit Court against Home-Owners Insurance Company, seeking wage-loss benefits under MCL 500.3107(1)(b) of the no-fault act, MCL 500.5101, *et seq.* Plaintiff was injured when he slipped and fell exiting his vehicle. Prior to the accident, plaintiff was the sole employee and shareholder of Brown & Brown, a subchapter S corporation. He annually received a W-2 salary as well as the flow-through earnings from the corporation as its sole shareholder. There was no dispute that plaintiff was entitled to wage-loss benefits. Rather, the parties disagreed over whether the benefit should have been calculated on the basis of his W-2 wages only, or whether it should have also included the flow-through earnings he received through the subchapter S corporation. The parties filed competing motions for summary disposition under MCR 2.116(C)(10). The circuit court, Rosemarie E. Aquilina, J., granted plaintiff's motion and denied defendant's motion, concluding that the phrase "loss of income" under MCL 500.3107(b) entitled plaintiff to benefits on his whole income, not just on his preaccident W-2 wages. The circuit court reasoned that to do otherwise would not place plaintiff in the same position he would have been in but for the accident, which would be contrary to public policy. In addition, the court granted plaintiff's motion for attorney fees under MCL 500.3148 and for penalty interest under MCL 500.3142. Defendant appealed.

The Court of Appeals *held*:

1. Under MCL 500.3107(b) a no-fault insurer is liable to pay benefits for work loss consisting of the loss of income from work that an injured person would have performed during the first three years after the date of the accident if he or she had not been injured. The statute does not limit the benefit to an injured person's lost wages, but rather includes other sources from work as well. Although "income" is not defined in the statute, the dictionary defines it as the monetary payment received for goods or services, or from other sources, such as rents or investment revenue or receipts. The purpose of this no-fault provision is to

ensure that work-loss benefits are available to compensate injured persons for the income they would have received but for the accident. When a corporate entity has no flow-through profits, but still pays wages to an injured party, the injured party is entitled to work-loss benefits under MCL 500.3107(b) for only his or her W-2 wages. The circuit court properly determined that plaintiff, as the sole employee and shareholder of the subchapter S corporation, was entitled to work-loss benefits on the basis of both his W-2 wages and the flow-through profits he received annually from the corporation; to do otherwise would have placed him in a worse position that he would have been in had the accident not occurred.

2. Under MCL 500.3148(1), attorney fees may be awarded to a claimant in a no-fault personal injury protection insurance case if the court determines that the insurer unreasonably refused to pay the claim or unreasonably delayed a making a proper payment. For attorney fees to be awarded, the benefit must be overdue and the court must determine in a postjudgment proceeding that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. If the lack of timeliness in payment is established, the insurer bears the burden of justifying the refusal or delay. An insurer may justify its delay or refusal to pay benefits by showing that the claim presented a legitimate question of statutory construction, constitutional law, or factual uncertainty. The trier of fact's ultimate decision that the insurer owed benefits to the claimant does not alone establish the unreasonableness of the insurer's initial decision. Rather, the court must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time. The circuit court erred by awarding plaintiff attorney fees under MCL 500.3148. Because MCL 500.3107(b) does not define the phrase "loss of income from work," a legitimate question of statutory interpretation existed and defendant did not act unreasonably by paying plaintiff work-loss benefits only on the basis of his W-2 wages.

3. Defendant's challenge to the award of penalty interest under MCL 500.3107(1)(b) was not addressed because the circuit court order granting summary disposition in favor of plaintiff was affirmed.

Affirmed in part and reversed in part.

1. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — SUBCHAPTER S CORPORATION.

A no-fault insurer is liable to pay benefits for work loss consisting of the loss of income from work that an injured person would have performed during the first three years after the date of the

accident if he or she had not been injured; the statute does not limit the benefit to an injured person's lost wages, but rather includes other sources from work as well; a person who is the sole shareholder and sole employee of a profitable subchapter S corporation is entitled under the no-fault act to work-loss benefits on the basis of both the W-2 wages and the flow-through profits he or she received from the subchapter S corporation because to do otherwise would have placed the no-fault claimant in a worse position than he or she would have been in had the accident not occurred (MCL 500.3107[b]).

2. INSURANCE — NO-FAULT — UNREASONABLE DENIAL OF BENEFITS — ATTORNEY FEES.

The no-fault act provides for an award of attorney fees to a claimant if the court determines that the insurer unreasonably refused to pay the claim or unreasonably delayed making a proper payment; for attorney fees to be awarded, the benefit must be overdue and the court must determine in a postjudgment proceeding that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment; if the lack of timeliness in payment is established, the insurer bears the burden of justifying the refusal or delay; the insurer may justify its delay or refusal to pay benefits by showing that the claim presented a legitimate question of statutory construction, constitutional law, or factual uncertainty; the trier of fact's ultimate decision that the insurer owed benefits to the claimant does not alone establish the unreasonableness of the insurer's initial decision; the court must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time (MCL 500.3148[1]).

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *George T. Sinas, Timothy J. Donovan,* and *Joel T. Finnell*), for Barry C. Brown.

*Dykema Gossett PLLC* (by *Lori McAllister*) for Home-Owners Insurance Company.

Before: BORRELLO, P.J., and FITZGERALD and OWENS, JJ.

PER CURIAM. Defendant, Home-Owners Insurance Company, appeals as of right the order denying its motion for summary disposition and granting plaintiff's

motion for summary disposition pursuant to MCR 2.116(C)(10) in this action under the no-fault act MCL 500.3101, *et seq*. Defendant also challenges the order awarding attorney fees and penalty interest to plaintiff. We affirm in part and reverse in part.

The facts of this case are not in dispute. On November 26, 2008, the 77-year-old plaintiff slipped and fell on ice while exiting his vehicle. Before the incident, plaintiff, a lawyer, was an employee of Brown & Brown, a subchapter S corporation specializing in arbitrations. The corporation was wholly owned by plaintiff.

Plaintiff has not been able to work since the incident. On May 16, 2009, plaintiff filed a claim with defendant, the insurer of his vehicle, for no-fault personal injury protection benefits. Defendant does not dispute that plaintiff is entitled to work-loss benefits pursuant to MCL 500.3107(1)(b).

Defendant submitted the information regarding plaintiff's claim for work-loss benefits to Walworth & Nayh, P.C., certified public accountants, which generated a report dated September 3, 2009. The report analyzed the work-loss claim using two different assumptions: (1) that *Ross v Auto Club Group*, 481 Mich 1; 748 NW2d 552 (2008), is applicable and that only plaintiff's W-2 wages can be considered in the calculation of wage-loss benefits, and (2) that *Ross* is not applicable and that the subchapter S distributions should also be considered in the calculation of wage loss benefits.

Defendant paid plaintiff work-loss benefits on the basis of the W-2 wages plaintiff would have received if he had continued to be an employee of Brown & Brown. Plaintiff objected to the calculation, contending that he was also entitled to work-loss benefits on the basis of

the profit the subchapter S corporation would have generated during the period of disability.

After plaintiff filed the present suit, the parties filed competing motions for summary disposition. Relevant to this appeal, the legal issue presented to the trial court was whether work-loss benefits under the no-fault act are payable only on the basis of plaintiff's W-2 wages, or whether they are payable on the basis of both W-2 wages and on the amount of flow-through earnings reported on a K-1 form that a plaintiff received as the sole shareholder of a subchapter S corporation. The parties stipulated to the material facts, including the following facts pertinent to this issue:

> (1) Barry Brown is entitled to work loss benefits pursuant to MCL 500.3107(1)(b) for the period of time subsequent to November 26, 2008 and continuing as long as he remains disabled up to and including through the third anniversary of the accident.
>
> (2) Although the parties disagree on the appropriate methodology for calculating the amount of Barry Brown's work loss benefit under MCL 500.3107(1)(b), the parties do agree that the amount of the work loss benefit is either of two numbers as calculated by Walworth and Nayh, P.C., certified public accountants, in accordance with the correspondence dated September 3, 2009 addressed to Home-Owners Insurance Company. Those numbers are:
>
> (a) $2,630.00 per 30 day period; or
>
> (b) $4,948.00 per 30 day period.
>
> (3) The determination of which of the two alternative wage loss benefit amounts applies to Mr. Brown will be based upon [the] determination of the Court following presentation of legal arguments by the parties with regard to the appropriate methodology for calculating Mr. Brown's work loss benefit under the facts and circumstances of this case.
>
> (4) Home-Owners has made work loss payments to Mr. Brown for the period of time from November 26, 2008 in the total sum of $72,063.77 through March 1, 2011.

A hearing was held on the competing motions for summary disposition on April 13, 2011. Plaintiff argued that work loss "is all of the income that was generated by his subchapter S corporation that was paid to him either as W-2 wages or - - and/or also the distributions that were paid to him as what the [Internal Revenue Service] calls pass-through income from his solely owned corporation, Subchapter S corporation." Plaintiff distinguished *Ross* on the ground that *Ross* involved an unprofitable subchapter S corporation that was not providing the plaintiff with income from distributions, whereas plaintiff's situation involved a profitable subchapter S corporation that had been providing plaintiff with income from distributions. The trial court granted summary disposition in favor of plaintiff, reasoning that

the no fault act defines work loss benefits as consisting of loss of income from work an injured person would have performed during the first three years after the date of the accident if he or she had not been injured. And that's MCL 500.3[10]7(1)(b). The [L]egislature could have easily limited the available benefits to loss of wages or loss of W-2 wages, but they chose not to. Under the plain meaning of the statute, plaintiff is entitled to benefits based on his whole income, not benefits based solely on his preaccident W-2 wages.

If I were to use defendant's reading of *Ross*, I would not put him in the same position he would have been in but for the accident. I would be putting him in a lesser position. That is contrary to public policy. It is contrary to the legislative intent. And I think it's clearly within what plaintiff's counsel read and the reasoning later stated in *Ross* about the separate existence will be respected unless doing so would subvert justice or cause a result that would be contrary to some other clearly overriding public policy.

We have the no fault act to make people whole. I don't want this plaintiff to be made less than whole. For me to

rule otherwise is to make him only partially satisfied. The Court will not do that. Therefore, it's the ruling of the Court that as to the 30 day [sic] period, the amount of lost benefit will be $4,948.

Plaintiff thereafter filed a "Motion for Penalty Interest and Attorney Fee Sanctions Pursuant to MCL 500.3142 and MCL 500.3148." In response, defendant argued that a legitimate question of statutory interpretation existed and that, therefore, attorney fees should not be awarded to plaintiff. Defendant also argued that penalty interest should not be awarded for the time period before defendant received reasonable proof of the amount and the fact of the loss. Following a hearing on August 31, 2011, the trial court entered an order granting plaintiff's motion for penalty interest and attorney fees.

On November 22, 2011, the trial court entered an order entering judgment in favor of plaintiff "for unreimbursed no-fault wage loss benefits to Plaintiff in the amount of $83,448. Plaintiff is also entitled to 12% penalty interest pursuant to MCL 500.3142 for any overdue work loss benefits commencing August 15, 2009 and continuing until paid." The court also awarded attorney fees pursuant to MCL 500.3148 in the amount of $15,000.[1]

I

Defendant first argues that the trial court erred by concluding that the profit generated by a subchapter S corporation is included in the work-loss calculation for benefits payable under MCL 500.3107(1)(b) of the no-fault act. We disagree.

---

[1] The trial court stayed the proceedings pursuant to MCR 7.209(E)(1) and the stipulation of the parties.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion brought under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties in a light most favorable to the nonmoving party. *Cadle Co v City of Kentwood*, 285 Mich App 240, 247; 776 NW2d 145 (2009). A motion for summary disposition under MCR 2.116(C)(10) may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Campbell v Dep't of Human Servs*, 286 Mich App 230, 235; 780 NW2d 586 (2009). Similarly, "[s]tatutory interpretation is a question of law that [this Court] review[s] de novo on appeal." *Johnson v QFD, Inc*, 292 Mich App 359, 364; 807 NW2d 719 (2011).

The no-fault act allows a seriously injured person to recover work-loss damages in tort arising from the ownership, use or maintenance of a motor vehicle. See MCL 500.3135(3)(c); see also MCL 500.3107(1)(b). Section 3107(1)(b) provides in part that a no-fault insurer is liable to pay benefits for "[w]ork-loss consisting of *the loss of income from work* an injured person would have performed during the first three years after the date of the accident if he or she had not been injured." The purpose of the provision is to ensure that work-loss benefits are available to compensate injured persons for the income they would have received but for the accident. *MacDonald v State Farm Mut Ins Co*, 419 Mich 146, 152; 350 NW2d 233 (1984). In general, the no-fault act is designed to achieve the expeditious compensation of damages resulting from motor vehicle accidents and to minimize administrative delays and factual disputes.

*Miller v State Farm Mut Auto Ins Co,* 410 Mich 538, 568; 302 NW2d 537 (1981).

Unfortunately, the term "loss of income from work," and in particular the term "income," is not defined in the statute. In the absence of a statutory definition, it is customary to look to dictionary definitions. *Stabley v Huron-Clinton Metro Park Auth,* 228 Mich App 363, 367; 579 NW2d 374 (1998). *Random House Webster's College Dictionary* (1997) defines income as "the monetary payment received for goods or services, or from other sources, such as rents or investments; revenue; receipts." Under the term's plain meaning, it would appear that "income" is not limited only to a person's wages. Rather, the term would appear to include gains or benefits that arise from other sources as well as a result of one's "work," or labor. Accordingly, MCL 500.3107(1)(b) does not appear to limit the benefits that it provides to an injured person's lost wages, but rather includes other sources of income from work as well. Indeed, the Legislature chose the term "loss of income from work" rather than "loss of wages" as the measure of damages.

Although there is no case law directly on point involving a subchapter S corporation operating at a profit, courts have considered related issues, and their rulings are instructive. In *Coates v Mich Mut Ins Co,* 105 Mich App 290, 294; 306 NW2d 484 (1981), this Court stated that "[t]he language of [MCL 500.3107(1)(b)] would appear to preclude benefits for the loss of income consisting of return on the investment of capital, as opposed to income generated from a person's endeavors, skill, and attention." This Court noted that a self-employed sole proprietor may recover lost profits when those profits were attributable to his or her personal efforts. *Id.* at 295. This holding was

reaffirmed in *Moghis v Citizens Ins Co of America*, 187 Mich App 245, 250; 466 NW2d 290 (1990), and *Kirksey v Manitoba Pub Ins Corp*, 191 Mich App 12, 17; 477 NW2d 442 (1991). In *Adams v Auto Club Ins Ass'n*, 154 Mich App 186, 191-193; 397 NW2d 262 (1986), this Court held that reasonable business expenses be deducted from gross receipts to determine lost income and thus, the profits. This Court also noted that "[t]he goal of the no-fault act is to place individuals in the same, but no better, position than they were before their automobile accident." *Id.* at 193. The holdings in these cases suggest that the interpretation of the term "loss of income from work" as used in the no-fault act, is broader than the term "lost wages."

Defendant argues, however, that the issue of whether distributions from a subchapter S corporation are income for purposes of MCL 500.3107(1)(b) has been settled by *Ross*, 481 Mich 1. Defendant contends that in *Ross* the Court found that when the injured party is the sole employee and sole shareholder of a subchapter S corporation that is operating at a loss, the proper measure of that person's damages, for no-fault purposes, is the injured party's W-2 wages. Based on this, defendant asserts that plaintiff is entitled to work-loss benefits only on the basis of his W-2 wages and that the income plaintiff would have earned as flow-through income from the S-corporation is irrelevant to the calculation of plaintiff's benefits.

The Court in *Ross* held that the plaintiff was "entitled to work-loss benefits based on his wages," *Ross*, 481 Mich at 8, and that " 'the business expenses of the corporation [were] irrelevant in calculating [the] plaintiff's wage loss . . . .' " *Ross*, 481 Mich at 8, quoting with approval from this Court's analysis in *Ross v Auto Club Group*, 269 Mich App 356, 362; 711 NW2d 787 (2006).

However, *Ross* is distinguishable from the facts of this case. While *Ross* concerned the calculation of work-loss benefits for an individual who was the sole employee and sole shareholder of a subchapter S corporation, the issue in *Ross* was "whether someone can recover work-loss benefits under MCL 500.3107(1)(b) if he or she is the sole employee and shareholder of a subchapter S corporation *that lost more money than it paid in wages*. *Ross*, 481 Mich at 7 (emphasis added). The Court held that when the corporate entity had no income to flow through to the injured party, but still paid wages to the injured party, the injured party was entitled to work-loss benefits and that the measure of those benefits was the amount of the injured party's W-2 wages. *Id.* at 9-10.

Defendant contends that the Court's holding that the measure of wage-loss benefits is the amount of the injured party's W-2 wages applies regardless of whether the subchapter S corporation is operating at a profit. Nothing in the Court's holding in *Ross* suggested that the Court intended its holding to extend beyond the specific factual situation presented in that case as defendant suggests. The Court noted that this Court had reached the right result for the right reason and clearly left open the possibility that under different circumstances its ruling might be different. The Supreme Court also quoted with approval this Court's reasoning in Ross, which noted that "[a corporation's] separate existence will be respected, unless doing so would subvert justice or cause a result that would be contrary to some other clearly overriding public policy." *Ross*, 481 Mich at 8, quoting *Ross*, 269 Mich App at 261 (citation and quotation marks omitted). The Court explicitly noted that the defendant in that case had not presented any evidence that would justify disregarding the above rule and, accordingly, found that the Court was required to respect the separate corporate existence

in determining the plaintiff's entitlement to work-loss benefits. *Ross*, 481 Mich at 8, quoting *Ross*, 269 Mich App at 262.

In *Ross*, because the plaintiff's subchapter S corporation was operating at a loss, there was no income distribution other than the W-2 wages the plaintiff had received. The holding in *Ross*, therefore, is limited to those situations in which the claimant's subchapter S corporation is operating at a loss. Nowhere in *Ross* does the Court say loss of income is limited to W-2 wages for a sole shareholder of a profitable subchapter S corporation. Thus, *Ross* is distinguishable from the facts in this case.

In the present case, plaintiff has presented evidence justifying the setting aside of the separate corporate existence of his business. Under the circumstances in this case where the subchapter S corporation was operating at a profit and where plaintiff was receiving and paying tax on flow-through income from the corporation, to not treat all income as loss of income from work would have the result of placing plaintiff in a worse position than he would have been in had the accident not occurred. That result would be inconsistent with the overall purpose of the no-fault act, "to place individuals in the same, but no better, position than they were before their automobile accident." *Adams*, 154 Mich App at 193.

II

Defendant asserts that the trial court erred when it awarded plaintiff attorney fees pursuant to MCL 500.3148(1), because a legitimate question of statutory interpretation existed. We agree.

A trial court's decision to grant or deny a motion for attorney fees presents a mixed question of fact and law.

*Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 693; 760 NW2d 574 (2008). This Court reviews the trial court's findings of fact for clear error, and questions of law de novo. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009) (citation and quotation marks omitted). However, this Court reviews for an abuse of discretion a trial court's ultimate decision whether to award attorney fees. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.*

In no-fault personal injury protection insurance cases, MCL 500.3148(1) permits a claimant to obtain attorney fees from an insurer "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

In *Moore* v *Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008), the Supreme Court noted:

> MCL 500.3148(1) establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1).

If a claimant establishes the first prerequisite, a rebuttable presumption arises regarding the second. *Attard v*

*Citizens Ins Co of America*, 237 Mich App 311, 317; 602 NW2d 633 (1999). The insurer then bears the burden of justifying the refusal or delay. *Id.*

An insurer may justify its refusal to pay a claimant benefits by showing that the claim presented a legitimate question of statutory construction, constitutional law, or factual uncertainty. *Univ Rehab Alliance*, 279 Mich App at 694. The trier of fact's ultimate decision that the insurer owed benefits to the claimant does not alone establish the unreasonableness of the insurer's initial decision. *Id.; Moore*, 482 Mich at 522. Rather, the court must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time. *Univ Rehab Alliance*, 279 Mich App at 694.

In this case the trial court, after listening to arguments at the hearing on the motion for attorney fees, simply ruled that "Defendant owes . . . the actual attorney fees pursuant to . . . MCL 500.3148 of the Michigan No-Fault statute." Although the trial court had granted plaintiff's motion for summary disposition, signaling its view that he had proper grounds for benefits, when ruling on the motion for attorney fees the trial court made no findings of fact and provided no analysis with regard to whether the delay in paying the full amount of work-loss benefits was unreasonable. We can infer, however, that the trial court implicitly concluded that a legitimate dispute concerning the statutory requirements did not exist. We disagree with this conclusion. Given the lack of definition of the phrase "loss of income from work," and in particular the term "income," in MCL 500.3107(1)(b), a legitimate question of statutory interpretation existed, particularly in light of the *Ross* Court's calculation of work-loss benefits for an individual who was the sole employee and sole

shareholders of a subchapter S corporation. Under these circumstances, we conclude that defendant did not act unreasonably by paying plaintiff work-loss benefits based upon his W-2 income. Consequently we reverse that part of the order awarding plaintiff attorney fees under MCL 500.3148(1).

III

Defendant argues that the award of penalty interest under MCL 500.3142 should be reversed in the event that this Court reverses the trial court's conclusion that the profit generated by a subchapter S corporation is included in the work-loss calculation for benefits payable under MCL 500.3107(1)(b). In light of our conclusion that the trial court properly concluded that the profit generated by a subchapter S corporation is included in the work-loss calculation for benefits payable under MCL 500.3107(1)(b), we need not address this issue.

Affirmed in part and reversed in part. Because neither side prevailed in full, neither side shall tax costs.

BORRELLO, P.J., and FITZGERALD and OWENS, JJ., concurred.