*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHAWN HALL and ROLL ON REHAB, INC,

UNPUBLISHED
January 16, 2025
2:10 PM

Plaintiffs-Appellees,

v

No. 368377
Mecosta Circuit Court
LC No. 2022-026318-NF

CITIZENS INSURANCE COMPANY,

Defendant-Appellant.

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

In this action for first-party personal injury protection (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, defendant Citizens Insurance Company appeals by right the trial court's order granting summary disposition to plaintiffs under MCR 2.116(C)(10) as to no-fault attorney fees, penalty interest, and costs, and its judgment awarding plaintiffs $60,000 in attorney fees, $112,431.94 in penalty interest, and $750.75 in costs. Citizens also challenges the trial court's order holding that a $110 hourly rate for skilled nursing services provided to plaintiff Shawn Hall is a reasonable rate, granting summary disposition to plaintiffs under MCR 2.116(C)(10) and (I)(1), and ordering Citizens to reprocess all bills from plaintiff Roll On Rehab, Inc. (ROR) from July 2, 2021 forward at a $110 hourly rate. Because we find that there is a genuine issue of material fact regarding the reasonableness of ROR's fees, we reverse, vacate, and remand the matter to the trial court for further proceedings.

## I. BACKGROUND

On July 15, 2000, Shawn sustained catastrophic injuries in an automobile accident, which resulted in quadriplegia necessitating 24-hour skilled nursing care. At the time of the accident, Shawn was covered by a no-fault automobile insurance policy that was issued by Citizens.

In approximately 2005, Shawn established ROR. Shawn was ROR's president, chief executive officer, chief financial officer (CFO), secretary, and sole stockholder. In approximately 2012, Shawn's mother, Paula Helms, became ROR's CFO. As the CFO, Helms handled the billing, the payroll, and licensing matters. At all times relevant to this action, registered nurses employed by ROR have provided Shawn with 24-hour skilled nursing care. None of the registered

-1-

nurses are related to Shawn, domiciled in his home, or had a business or social relationship with Shawn before the July 2000 accident. Since at least December 3, 2017, ROR has charged a $110 hourly rate for the 24-hour skilled nursing care provided to Shawn. Citizens paid ROR for the 24-hour skilled nursing care provided to Shawn at a $110 hourly rate through July 1, 2021.

In 2019, Michigan's no-fault act was amended. See 2019 PA 21; 2019 PA 22. Relevantly, the 2019 amendments included a 56-hour weekly statutory cap on reimbursable hours for attendant care provided by relatives and fee schedules that limited reimbursement rates for medical providers for treatment rendered after July 1, 2021. See MCL 500.3157(7) and (10). After July 2, 2021, Citizens reduced its payments to ROR to $62.98 per hour and only paid for 56 hours of weekly nursing services for Shawn.

Helms resigned as ROR's CFO effective May 1, 2021 (Helms Dep, p 18). On January 10, 2022, Shawn sold ROR to Natalie Farro for $2.5 million.[1] Shawn maintains that he sold ROR because Citizens was not paying for more than 56 hours of weekly care because he owned ROR. After the sale, Citizens still refused to pay for more than 56 hours of weekly nursing services for Shawn.

In April 2022, plaintiffs filed this breach of contract action against Citizens alleging that Citizens' payment delays and refusal to pay the full amounts billed by ROR jeopardized Shawn's care, safety, health, overall wellbeing, and life. After Citizens filed its answer and affirmative defenses, Shawn moved for an emergency preliminary injunction and requested the court to compel Citizens to pay ROR for the full 24-hour daily skilled nursing care services at an hourly rate of at least $110 from July 2, 2021 through the end of the litigation. In response, Citizens argued that the amendments to MCL 500.3157 applied to treatment rendered to Shawn after July 1, 2021, and contended it paid ROR pursuant to the statutory fee schedule and the 56-hour weekly statutory cap. Relying on a December 2020 market survey of providers in and near Mecosta County, Citizens further argued that ROR's rates prior to July 1, 2021 "far exceeded those of any similar provider in the geographic area." In reply, Shawn maintained that the new fee schedules were not retroactively applicable to his claims. Shawn further asserted that the 56-hour weekly limit was inapplicable because he had no familial, domestic, or social relationship with ROR. Shawn also provided an affidavit from Deedee Perez, his nurse case manager, who averred that she personally contacted all of the homecare providers listed in the December 2020 market survey relied on by Citizens, and none of the providers were willing and/or able to take on Shawn's care.

Following a hearing, the trial court entered a preliminary injunction on June 9, 2022, ordering Citizens to (1) process and pay all of ROR's bills for skilled nursing care rendered to Shawn from January 10, 2022 through the end of the litigation at an hourly rate of $71.57 for the full 168 hours per week, (2) process and pay by June 22, 2022 all of ROR's bills for skilled nursing care rendered to Shawn from January 10, 2022 through June 9, 2022, and (3) timely pay the ordered amounts within 30 days as required by the no-fault act for all bills incurred after June 9, 2022.

---

[1] Farro agreed to pay Shawn $10,000 monthly for the purchase of ROR.

Following discovery, plaintiffs moved for summary disposition under MCR 2.116(C)(10) and (I)(1). Plaintiffs maintained that Citizens admitted that ROR's $110 hourly rate for skilled nursing care rendered to Shawn was reasonable, as reflected by its payments to ROR for skilled nursing services rendered to Shawn from December 2017 through July 1, 2021 at a $110 hourly rate. Plaintiffs argued that Jill Fundaro, the Citizens adjuster responsible for Shawn's claim since August 1, 2022, was unable to provide testimony or evidence to dispute the reasonableness of ROR's hourly rates and testified that she had not done a market survey or any other research "that would lead [her] to know whether $110 is reasonable or not." Plaintiffs further asserted that this Court's majority decision in *Andary v USAA Casualty Ins Co*, 343 Mich App 1; 966 NW2d 784 (2022), aff'd in part, vacated in part, rev'd in part 512 Mich 207; 1 NW3d 186 (2023), established that the 2019 amendments to MCL 500.3137 were not applicable to the charges for Shawn's skilled nursing services.

Citizens argued that plaintiffs failed to meet their burden to establish by a preponderance of the evidence the reasonableness of the $110 hourly rate charged by ROR for Shawn's skilled nursing care. Citizens asserted that plaintiffs presented no evidence or testimony regarding the reasonableness of ROR's rates or how the rates were determined. Instead, plaintiffs simply relied on the fact that Citizens had previously paid ROR's $110 hourly rate, which Citizens contended was not dispositive of the rate's reasonableness. Citizens presented two market surveys—one for the Mecosta County, Michigan area where Shawn resides part of the year and one for the Maricopa County, Arizona area where Shawn resides the other part of the year.[2] The Arizona market survey reflected that homecare agencies charged an average hourly rate of $83.42 for RNs. The Michigan market survey reflected that homecare agencies charged an average hourly rate of $87 for RNs. Citizens asserted that the surveys established that $110 was an unreasonable hourly rate and thus summary disposition in favor of Citizens was warranted under MCR 2.116(I)(2).

In reply, plaintiffs argued that Citizens' market surveys should be disregarded under MCR 2.313 because the only position Citizens had asserted in its pleadings and discovery responses was that MCL 500.3157, as amended, was applicable to the claims at issue. Plaintiffs argued that Citizens should be precluded from relying on the surveys that were completed after discovery because Citizens failed to supplement its discovery responses and did not produce the surveys until it filed its response to plaintiffs' dispositive motion. Plaintiffs further contended that ROR's rates were established with input from Shawn's nurse case manager, Gene Harrison, and supported by rates quoted by other homecare companies in 2017.[3] Plaintiffs asserted that this information was provided to Citizens' prior adjuster, Christian Gaulin, who determined ROR's $110 hourly rate was reasonable, as reflected by the EORs for ROR's services rendered before July 2, 2021.

Following a hearing, the trial court entered an order granting plaintiffs' motion for summary disposition and ordering Citizens to pay a reasonable rate for Shawn's care. The court

---

[2] The surveys were dated April 6, 2023. Citizens filed its response to plaintiffs' dispositive motion on April 14, 2023.

[3] Plaintiffs provided copies of quotes from 2017 from four different healthcare companies in Arizona ranging from $110 to $140 per hour for the skilled nursing care services that Shawn required. The average hourly rate was $121.25.

determined that a reasonable rate for Shawn's "past and present nursing care is $110/hour." Citizens was ordered to reprocess all of ROR's bills from July 2, 2021 to the present at $110 per hour for 24 hours daily within 30 days of the April 18, 2023 hearing date.

Thereafter, plaintiffs moved for summary disposition under MCR 2.116(C)(10) arguing that Citizens' failure to pay the charges at issue was unreasonable and thus plaintiffs were entitled to no-fault attorney fees in the amount of $60,000 under MCL 500.3148, penalty interest in the amount of $112,431.94 under MCL 500.3142, and taxable costs in the amount of $750.75 under MCR 2.625(A)(1). Plaintiffs supported their claim for penalty interest with invoices and payment breakdowns.[4] Plaintiffs supported their attorney-fee claim with an affidavit from plaintiffs' counsel, detailed time records from plaintiffs' counsel at an initial hourly rate of $350 that increased to $385 in 2023, and the State Bar of Michigan's 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report. Plaintiffs also included a bill of costs. In response, Citizens argued that there was a genuine dispute whether the 2019 amendments to the no-fault act applied to plaintiffs' claims and whether ROR's rates were reasonable. Thus, Citizens asserted that its payment delay was reasonable and it was not liable for plaintiffs' attorney fees. Citizens further argued, if the court determined that its payment delay was unreasonable, an evidentiary hearing was required to determine the amount of attorney fees that plaintiffs were entitled to. Citizens did not challenge plaintiffs' penalty interest calculations, attorney billing records, attorney hourly rates, or bill of costs. The trial court concluded that Citizens unreasonably refused to pay benefits and thus granted summary disposition to plaintiffs and awarded plaintiffs $60,000 in attorney fees, $112,431.94 in penalty interest, and $750.75 in costs.

Defendant moved for reconsideration of the trial court's grant of plaintiffs' motion for summary disposition as to attorney's fees, penalty interest, and costs, which the trial court denied. This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo underlying issues of statutory interpretation. *Drob v SEK 15, Inc*, 334 Mich App 607, 617; 965 NW2d 683 (2020).

Plaintiffs sought summary disposition under MCR 2.116(C)(10), which is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). A court "is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether

---

[4] The calculations were based on ROR invoices billed at a $110 hourly rate.

a genuine issue of any material fact exists to warrant a trial." *Id*. Plaintiffs also sought summary disposition under MCR 2.116(I)(1), which may be granted when the "affidavits or other proofs show that there is no genuine issue of material fact."

A request for attorney fees under MCL 500.3148(1) presents a mixed question of law and fact. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). A "trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact." *Id*. "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Id.* We review questions of law de novo, but we review a trial court's findings of fact for clear error. *Id.* "A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.* (cleaned up). We review "for an abuse of discretion a trial court's ultimate decision whether to award attorney fees. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012) (cleaned up).

## III. REASONABLENESS OF MEDICAL CHARGES

Citizens argues that the reasonableness of ROR's $110 hourly charge for the skilled nursing care provided to Shawn is a question of fact for the jury to determine and thus the trial court erred by granting summary disposition in favor of plaintiffs under MCR 2.116(C)(10) and (I)(1). We agree.

When the no-fault act was enacted more than 50 years ago, the goal "was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). MCL 500.3107(1)(a) provides that PIP benefits are payable for "[a]llowable expenses consisting of *reasonable charges* incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."[5] (Emphasis added.) It is well established that attendant care benefits are an allowable expense for purposes of the no-fault act. See, e.g., *Douglas v Allstate Ins Co*, 492 Mich 241, 259-264; 821 NW2d 472 (2012); *Booth v Auto-Owners Ins Co*, 224 Mich App 724, 729-730; 569 NW2d 903 (1997).

In 2019, the Legislature enacted 2019 PA 21 and 2019 PA 22, which made changes to the no-fault act. These changes included fee schedules that limited reimbursement rates for medical providers for treatment rendered after July 1, 2021, MCL 500.3157(7), and imposed a statutory cap on reimbursable hours for attendant care, MCL 500.3157(10). Although Citizens initially asserted that the fee schedules and the 56-hour weekly cap on reimbursable hours for attendant care applied to ROR's services rendered to Shawn after July 1, 2021, our Supreme Court concluded in *Andary v USAA Casualty Ins Co*, 512 Mich 207, 237; 1 NW3d 186 (2023) that the new limits

---

[5] MCL 500.3107 was amended by 2019 PA 21, but the amendments to MCL 500.3107(1)(a) have no impact in this appeal.

-5-

in MCL 500.3157(7) and (10) "do not apply to any insured who was injured while covered by an insurance policy issued before June 11, 2019."[6]

It is undisputed that Shawn was injured in a July 15, 2000 automobile accident and the no-fault policy providing coverage to Shawn took effect before the accident. It is further undisputed that Shawn is not receiving family-provided attendant care. Accordingly, the 2019 amendments to MCL 500.3157(7) and (10) are not applicable to plaintiffs' claims arising out of the July 2000 accident. *Id*. Citizens does not contest this issue. Citizens also does not dispute that Shawn requires 24-hour attendant care services as a result of the injuries that he received in the accident or that such care has been provided to Shawn by ROR. The only dispute is whether ROR's $110 hourly charge is reasonable.

"When a covered person is injured and requires medical treatment, they or their lawful medical provider are entitled to charge and be reimbursed for 'a reasonable amount for the products, services and accommodations rendered,' so long as charges do 'not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.' " *Id*. at 217-218, quoting MCL 500.3157, as enacted by 1972 PA 294.[7] A provider's "customary" charge "is simply the cap on what [it] can charge, and is not, automatically, a 'reasonable' charge requiring full reimbursement under [MCL 500.]3107." *Advocacy Org for Patients & Providers (AOPP) v Auto Club Ins Ass'n*, 257 Mich App 365, 377; 670 NW2d 569 (2003), aff'd 472 Mich 91; 693 NW2d 358 (2005). "When read in harmony, §§ 3107 and 3157 clearly indicate that an insurance carrier need pay no more than a reasonable charge and that a health care provider can charge no more than that." *Spectrum Health Hosps v*

---

[6] Previously, a majority of this Court held that the amendments of MCL 500.3157(7) and (10) do not apply retroactively to individuals who were injured and whose right to no-fault benefits vested before the effective date of the amendments. *Andary*, 343 Mich App at 23-25. The Supreme Court affirmed this Court's judgment in that regard.

[7] MCL 500.3157(1) stated as follows before the 2019 amendment of the no-fault act:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by [PIP], and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

MCL 500.3157(1), as amended by 2019 PA 21, is substantively the same:

> Subject to subsections (2) to (14), a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury covered by [PIP], or a person that provides rehabilitative occupational training following the injury, may charge a reasonable amount for the treatment or training. The charge must not exceed the amount the person customarily charges for like treatment or training in cases that do not involve insurance.

*Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 480; 960 NW2d 186 (2020) (cleaned up). "It may be that a health-care provider's 'customary' charge is also reasonable given the services provided, while at other times the 'customary' charge may be too high, and thus unreasonable." *AOPP*, 257 Mich App at 379.

"[I]nsurers are *required* to challenge the reasonableness of charges, and providers should expect no less." *Bronson Methodist Hosp v Auto-Owners Ins* Co, 295 Mich App 431, 448; 814 NW2d 670 (2012). "A plaintiff seeking payment of no-fault benefits bears the burden of proving both the reasonableness and the customariness of the provider's charges." *Spectrum Health*, 333 Mich App at 480-481. A plaintiff must establish the reasonableness of the charges by a preponderance of the evidence, but "[w]hether the amount charged is reasonable is ultimately a question of fact for a jury." *Id*. at 484. See also *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 472 Mich 91, 95; 693 NW2d 358 (2005) ("[I]t is for the trier of fact to determine whether a medical charge, albeit 'customary,' is also reasonable.").

The no-fault act does not define what a "reasonable" charge is. This Court has construed the term to mean that "a healthcare provider's charge must be fair, proper, or moderate, in accord with reason, and not excessive." *Spectrum Health*, 333 Mich App at 499. A healthcare provider's "itemized bills and records do not, standing alone, satisfy the 'reasonableness' requirement." *Id*. at 484 (cleaned up). "A medical provider's typical price cannot be deemed reasonable unless it reflects an amount that is actually being charged in the marketplace, and a realistic standard considers the amount insurers actually pay and the amount a medical provider is willing to accept." *Id*. at 502. "[W]hen assessing the reasonableness of a medical charge, relevant evidence includes the full range of charges and payments falling within the pertinent time frame for the particular services, products, and treatment at issue in the case." *Id*. at 503 (cleaned up). "Among that evidence, the jury may consider the amounts paid by third parties because such evidence throws some light on the reasonableness of the charges." *Id*. (cleaned up). While the amount that others pay for the same goods or services is a relevant factor to be considered, it "does *not* conclusively establish a reasonable amount." *Id*. at 501-502. Another relevant factor to consider in evaluating the reasonableness of the charges submitted for payment is "the cost *to plaintiff* of providing that treatment." *Bronson*, 295 Mich App at 450-451. However, the provider's cost is not dispositive on the issue whether its charges are reasonable. *Id*. at 454.

In this case, plaintiffs argued that this Court's majority decision in *Andary* required Citizens to reprocess ROR's bills for services rendered to Shawn after July 1, 2021 and pay reasonable rates. Plaintiffs contended ROR's $110 hourly rate was reasonable, citing Citizens' prior payments of ROR's $110 hourly rate for the skilled nursing care provided to Shawn from December 2017 through July 1, 2021. Plaintiffs further argued that Fundaro, the Citizens adjuster responsible for Shawn's claim since August 2022, admitted that she had not done anything to evaluate the reasonableness of the rates charged by ROR for Shawn's care, she was not aware of any market surveys or analyses done by Citizens regarding the reasonableness of the rates, and she was unable to dispute that Citizens paid the $110 hourly rate up until July 1, 2021. However, Fundaro explained that she began handling Shawn's claim on August 1, 1022 and thus could not speculate whether the prior adjuster concluded that $110 was a reasonable hourly rate. She further explained that, before she assumed the handling of Shawn's claim, the court issued a preliminary injunction setting a $71.75 hourly rate for Shawn's care and thus she did not have any authority to adjudicate claims regarding payments to ROR.

Citizens did not contest that it was obligated to pay a reasonable rate for the skilled nursing services rendered to Shawn. But it argued that plaintiffs had failed to meet their burden to establish the reasonableness of ROR's $110 hourly rate. Citizens asserted that neither Shawn, his mother, nor Farro were able to provide any testimony supporting the reasonableness of ROR's rates or how the rates were determined. Citizens contended that its prior payments of ROR's $110 hourly rate were not dispositive on the issue whether ROR's hourly rates are reasonable. Citizens countered with two market surveys of home healthcare agencies—one reflected an average hourly rate of $83.42 for RNs in Arizona and one reflected an average hourly rate of $87 for RNs in Michigan. Citizens asserted the surveys established that $110 was an unreasonable hourly rate and thus summary disposition in favor of Citizens was warranted under MCR 2.116(I)(2).

Although plaintiffs contended that Citizens did not raise a rate dispute until it responded to their motion for summary disposition, and the trial court agreed, the record does not support plaintiffs' contentions. Indeed, the crux of Citizens' arguments throughout the litigation was that MCL 500.3157, as amended, was applicable to the claims at issue. However, in response to the motion for a preliminary injunction, Citizens stated, "Even prior to the fee schedule of MCL 500.3157 going into effect and defining reasonable amounts for PIP benefits, [ROR's] pre-reform rates far exceeded those of any similar provider in the geographic area." In support of this argument, Citizens referred to a December 2020 market survey of providers in and near Mecosta County. Shawn provided an affidavit from his nurse case manager, who averred that she personally contacted all of the homecare providers listed in the December 2020 market survey, and none of the providers were willing and/or able to take on Shawn's care.

Citizens also denied liability in its initial disclosures and discovery responses. Citizens contended in its initial disclosures that "the claimed treatment was not reasonably necessary, or reasonable and customary in cost" and that "Plaintiffs have failed to provide reasonable proof relative to the reasonability of the at issue charges pursuant to MCL 500.3157 and MCL 500.3107." And in response to plaintiffs' first discovery request, Citizens stated that "information regarding Defendant's dispute of rates has already been disclosed/produced or is otherwise in Plaintiffs' possession." Citizens referred to its "previously produced claim file . . . as well as documents relied upon in Defendant's Responses to both of Plaintiffs' Emergency Motions for Preliminary Injunction[,]"[8] which included the 2020 market survey. Although Citizens did not supplement its discovery responses to provide the 2023 market surveys before filing its response to plaintiffs' motion for summary disposition, the surveys were dated just eight days prior to Citizens filing its motion response. Thus, it does not appear from the record that Citizens had the surveys in its

---

[8] Shawn also filed an emergency motion for preliminary injunction in a prior action. *Hall v Citizens Ins Co*, Mecosta Circuit Court Case No. 21-26164-NF. The trial court concluded that Shawn was unlikely to succeed on the merits because MCL 500.3157, as amended, applied to services rendered prospectively. The court also concluded that Shawn failed to establish irreparable harm, seriousness of such harm, and that an injunction was in favor of the public good. The court denied Shawn's motion for a preliminary injunction. Shawn subsequently dismissed the case without prejudice.

possession for more than a week. Further, while plaintiffs argued that the court should disregard the surveys under MCR 2.313, the trial court did not impose any discovery sanctions.

Citizens argues that plaintiffs have not provided any evidence or testimony to support ROR's cost to provide skilled nursing care to Shawn. Helms testified that, when she was CFO of ROR, the hourly base rate of pay for the employees was between $40 and $50. In addition to the base rate paid to employees, Helms testified that ROR had other costs, including bonuses, workers' compensation, employer taxes, liability insurance, paid time off, and overtime. However, Helms was unable to provide details regarding the cost to ROR to provide the hourly skilled nursing care to Shawn. In addition to the costs Helms testified about, Shawn testified that there were costs for mileage, computers, electricity, offices, and the tools needed to perform the care rendered to Shawn. But Shawn was unable to provide details regarding ROR's cost to provide the care at issue.

The record includes an affidavit from Farro, ROR's owner, wherein she averred that ROR's charge description master that was in effect as of January 2019 provided for a $125 hourly rate for the type of skilled nursing care that Shawn requires. Because ROR historically billed a $110 hourly rate for Shawn's skilled nursing care, ROR continued to bill that rate after Farro's purchase of ROR "in an effort to avoid further payment disputes and delays with Citizens, which were typical." However, Farro stated that ROR "more recently" billed Citizens a $125 hourly rate for the skilled nursing care provided to Shawn. Farro averred that ROR's nurses are paid $55-60 per hour, along with bonuses, vacation pay, and paid time off. In addition, ROR has general business expenses, including insurance and taxes. Farro maintained that "ROR would not be able to hire a currently licensed [registered nurse] in Arizona (where Shawn resides for part of the year) for under $50/hour at this time. It would probably be closer to $55/hour." But Farro testified that she could not provide a breakdown of the cost to ROR to provide the hourly skilled nursing care to Shawn.

It is plaintiffs' burden to establish the reasonableness of ROR's charges. *Spectrum Health*, 333 Mich App at 480-481. An insurance company "has the right to deny a claim (or part of a claim) for unreasonableness under [MCL 500.3107]." *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 18; 795 NW2d 101 (2009). It is then a plaintiff's "burden to prove that the charges are in fact reasonable." *Id*. And, as the moving parties, plaintiffs bore the burden of establishing the absence of any genuine issue of material fact. MCR 2.116(G)(4). Plaintiffs simply relied on the fact that Citizens had previously paid ROR's $110 hourly rate. Although this is a relevant factor to consider, it is not dispositive of the rate's reasonableness. See *Spectrum Health*, 333 Mich App at 484. Indeed, for years, Citizens paid the $110 hourly rate to ROR and a trier of fact could deem its current challenge to the reasonableness of that rate as disingenuous. But, ultimately, it is a question of fact for a jury to determine whether the hourly rate charged by ROR is reasonable. *Id*. Accordingly, the trial court erred by granting summary disposition to plaintiffs.

## IV. NO-FAULT ATTORNEY FEES AND PENALTY INTEREST

Citizens also argues that the trial court erred by awarding plaintiffs no-fault attorney fees, penalty interest, and costs.

MCL 500.3142(2) states that "benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." "An overdue payment bears simple interest at the rate of 12% per annum." MCL 500.3142(4). In addition, "[t]he no-fault act provides for attorney fees when an insurance carrier unreasonably withholds benefits." *Ross*, 481 Mich at 7, citing MCL 500.3148(1). MCL 500.3148(1) provides, in pertinent part:

> [A]n attorney is entitled to a reasonable fee for advising and representing a claimant in an action for [PIP] benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. . . .

"MCL 500.3148(1) establishes two prerequisites for the award of attorney fees." *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008). First, benefits must be overdue under MCL 500.3142(2). *Id*. "Second, in postjudgment proceedings, the trial court must find that the insurer 'unreasonably refused to pay the claim or unreasonably delayed in making proper payment.'" *Moore*, 482 Mich at 517, quoting MCL 500.3148(1). "If a claimant establishes the first prerequisite, a rebuttable presumption arises regarding the second," and "[t]he insurer then bears the burden of justifying the refusal or delay." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690-691; 828 NW2d 400 (2012). "An insurer may justify its refusal to pay a claimant benefits by showing that the claim presented a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id*. at 691. A trial court "must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time." *Id*. "[T]he determinative factor . . . is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Moore*, 482 Mich at 522 (cleaned up).

Given our holding that the reasonableness of ROR's hourly rate is a question of fact for the jury, thereby requiring remand for additional proceedings, whether the trial court erred by awarding plaintiffs attorney fees, penalty interest, and taxable costs need not be considered because an award of attorney fees, penalty interest, and costs at this juncture would be premature.

## V. CONCLUSION

We reverse the trial court's order granting summary disposition to plaintiffs under MCR 2.116(C)(10) and (I)(1) and ordering Citizens to reprocess all bills from ROR from July 2, 2021 forward at a $110 hourly rate. We also reverse the order granting summary disposition to plaintiffs under MCR 2.116(C)(10) as to no-fault attorney fees, penalty interest, and costs, and vacate the

judgment awarding plaintiffs $60,000 in attorney fees, $112,431.94 in penalty interest, and $750.75 in costs. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates