*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SPECTRUM HEALTH HOSPITALS d/b/a
SPECTRUM HEALTH AND COREWELL
HEALTH, and SPECTRUM HEALTH PRIMARY
CARE PARTNERS,

UNPUBLISHED
February 18, 2026
10:24 AM

Plaintiffs-Appellees,

v

No. 374980
Kent Circuit Court
LC No. 23-011581-NF

AUTO-OWNERS INSURANCE COMPANY,

Defendant-Appellant.

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Defendant, Auto-Owners Insurance Company, appeals by right the trial court order granting summary disposition under MCR 2.116(C)(10) in favor of plaintiffs, Spectrum Health Hospitals, d/b/a Spectrum Health and Corewell Health, and Spectrum Health Primary Care Partners, in this case concerning a delay in payments for medical treatment that were owed under the no-fault insurance act, MCL 500.3101 *et seq*. On appeal, defendant argues that the trial court erred by awarding attorney fees to plaintiffs and that the trial court lacked subject-matter jurisdiction over the claim. We affirm.

## I. BACKGROUND

This case arises out of a motorcycle versus motor vehicle collision on May 14, 2023. Aaron Brown was driving the motorcycle, and Leah Woolf was driving the motor vehicle. Brown was traveling behind Woolf on South Division in Grand Rapids, Michigan, when Woolf made an abrupt right turn. Brown was unable to stop and collided with Woolf's car. Brown sustained injuries, and his girlfriend drove him from the crash site to a Spectrum Health hospital. Through Spectrum, Brown was treated for several injuries, including multiple rib fractures, a scapular fracture, and a significant displacement of his clavicle that required surgery to fix.

At the time of the accident, defendant insured Woolf. Brown indicated to police officers at the scene that he was insured by Progressive. Defendant called Woolf on June 15, 2023, and

-1-

she said that she overheard Brown make statements to police officers indicating that he might not have auto insurance. Defendant then made three calls to Brown's attorney requesting a copy of his insurance policy declarations page to confirm that Brown's motorcycle was insured at the time of the crash. After the calls went unreturned, defendant called Progressive on June 29, 2023, and Progressive confirmed that Brown had an active policy in effect at the time of the accident. However, Progressive would not provide defendant with a copy of its declarations page for Brown's policy without his authorization.

Under the no-fault act, the insurer of a motor vehicle involved in an accident with a motorcycle typically is first in priority to pay no-fault benefits. MCL 500.3114(5)(a). Accordingly, plaintiffs began submitting Brown's medical bills on various dates to defendant for payment. However, in September 2023, defendant denied plaintiffs' requests for payment, explaining that the claim was under investigation.

On November 22, 2023, plaintiffs filed the instant action against defendant to recover $76,796.33 in unpaid medical bills for Brown's treatment. During discovery, plaintiffs issued a subpoena to Progressive to obtain Brown's policy documents, which plaintiffs forwarded to defendant in March 2024. The policy documents included a declarations page confirming that Brown's policy was in effect at the time of the accident. After receiving these documents, defendant eventually began making payments on plaintiffs' claims on July 15, 2024.

In August 2024, after the close of discovery, plaintiffs moved in the trial court for summary disposition under MCR 2.116(C)(10), arguing that as a matter of law, plaintiffs were entitled to payment of all outstanding charges, as well as penalty interest on the overdue payments and attorney fees on the basis of the unreasonable delay in making payments. Defendant denied that summary judgment was appropriate, asserting that its delay in making payments to plaintiffs was reasonable because defendant had needed time to confirm to its satisfaction whether Brown was insured at the time of the crash. Defendant further argued that the trial court lacked subject-matter jurisdiction over the claim on the basis that defendant had made several payments so that the amount in controversy fell well below the circuit court's $25,000 jurisdictional threshold. Accordingly, defendant requested that the circuit court dismiss the claim or transfer the matter to the district court.

On December 2, 2024, the trial court issued an opinion and order regarding plaintiffs' motion for summary disposition. The trial court first determined that it had jurisdiction over plaintiffs' claims because jurisdiction is based on the amount alleged in the pleadings—$76,796.33 in this case—not on some lesser amount remaining later. Therefore, the trial court denied defendant's request for dismissal or transfer. The trial court then found that defendant's payments to plaintiffs were not made within 30 days after defendant received reasonable proof of the fact and amount of loss sustained, so the payments were "overdue," and defendant was required to pay penalty interest under MCL 500.3142. Finally, the trial court determined that defendant's delay in making payments was unreasonable, entitling plaintiffs to attorney fees under MCL 500.3148.

Defendant moved in the trial court for reconsideration, which the trial court denied. Plaintiffs moved for entry of judgment, and the trial court entered judgment for $501.09 in payment of plaintiffs' remaining charges, $2,402.88 in penalty interest, and $17,343 in attorney fees, for a total judgment of $20,246.94. This appeal followed.

## II. ATTORNEY FEES

Defendant argues that the trial court erred by awarding attorney fees to plaintiffs under MCL 500.3148 because the trial court failed to use the correct analysis and erroneously determined that defendant's delay in making payments was unreasonable. We disagree.

## A. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion made under MCR 2.116(C)(10) is properly granted when there are no disputed material facts and, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *Id*. at 160. Likewise, to the extent that this issue involves interpreting various provisions of the no-fault act, we review de novo a trial court's interpretation of statutes. *Woodman v Dep't of Corrections*, 511 Mich 427, 440; 999 NW2d 463 (2023).

A request for attorney fees under MCL 500.3148(1) presents a mixed question of law and fact. *Abdulla v Progressive Southeastern Ins Co*, ____ Mich App ____, ____; ____ NW3d ____ (2024) (Docket Nos. 364797 and 364866); slip op at 4. The findings of fact underlying an award of attorney fees are reviewed for clear error, and underlying questions of law are reviewed de novo. *Id*. "With that said, we review a trial court's ultimate decision to award attorney fees for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Johnson v USA Underwriters*, 328 Mich App 223, 247; 936 NW2d 834, 846 (2019) (quotation marks and citations omitted). Stated differently, an award of attorney fees should be upheld unless it appears that the trial court's finding on the "reasonableness" requirement was an abuse of discretion. *Bloemsma v Auto Club Ins Assn*, 174 Mich App 692, 697; 436 NW2d 442 (1989).

## B. ANALYSIS

The no-fault act provides for a system of mandatory no-fault automobile insurance, which requires Michigan drivers to purchase personal protection insurance (PIP). The no-fault act was intended to provide insured persons who have sustained injuries in automobile accidents with assured, adequate, and prompt compensation for certain economic losses. *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978), cert den 442 US 934 (1979). To that end, the act provides for penalty interest and attorney fees when an insurer unreasonably refuses to make timely benefits payments. MCL 500.3142(2) and (4); MCL 500.3148(1). As noted by plaintiffs on appeal, the penalty-interest and attorney-fees provisions create an "axiom" under the no-fault act that insurers "must pay PIP benefits to claimants promptly and sort out priority and reimbursement issues later." *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 519; 968 NW2d 482 (2021). "That axiom is actualized by the very real possibility that steep penalties will be assessed against an insurer that drags its feet in paying PIP benefits to claimants." *Id*.

Under the penalty-interest provision, benefits "are payable as loss accrues," MCL 500.3142(1), and benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Overdue

payments are subject to a penalty of 12% interest paid to the beneficiary for the period in which benefits are overdue. MCL 500.3142(4). "Penalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits." *Morales v State Farm Mutual Ins Co*, 279 Mich App 720, 730; 761 NW2d 454 (2008).

> In turn, the attorney-fee provision provides:

> [A]n attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

Thus, "MCL 500.3148(1) establishes two prerequisites for the award of attorney fees." *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008), rehearing den 483 Mich 928 (2009). First, benefits must be overdue under MCL 500.3142(2). *Id*. "Second, in postjudgment proceedings, the trial court must find that the insurer 'unreasonably refused to pay the claim or unreasonably delayed in making proper payment.' " *Id*., quoting MCL 500.3148(1).

> "If a claimant establishes the first prerequisite, a rebuttable presumption arises regarding the second," and "[t]he insurer then bears the burden of justifying the refusal or delay." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690-691; 828 NW2d 400 (2012). "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Ross*, 481 Mich at 11. A trial court "must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time." *Brown*, 298 Mich App at 691. "[T]he determinative factor . . . is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Moore*, 482 Mich at 522 (cleaned up).

> In this case, defendant argues that the trial court failed to consider the reasonableness of the delay in payment and that the trial court's reference to *Bronson* is proof of that failure. We are not persuaded. Before engaging in its attorney-fee analysis, the trial court first considered plaintiffs' claim for penalty interest and determined that: "Plaintiffs sent documentation of their charges to defendant and defendant failed to pay within thirty days of receipt. Therefore, plaintiffs are entitled to 12% interest from defendant." In reaching this conclusion about penalty interest, the trial court necessarily found that defendant's payments were overdue, which satisfied the first prong of the attorney-fee analysis. See *Brown*, 298 Mich App at 691.

> Next, the trial court turned to the second prong, the reasonableness of the delay:

> Defendant argues its denial was reasonable even though Plaintiffs sent reasonable proof in June of 2023. However, pursuant to *Bronson Health Care Group, Inc v Titan Ins Co*, insurers are not allowed additional time beyond the statutory 30 days to conduct their own investigations regarding a claimant's eligibility to receive benefits." 314 Mich App 577, 582; 887 NW2d 205 (2016).

Failure to comply with MCL 500.3142(2) in order to investigate a claimant's possible ineligibility is not permitted. *Id*. at 583.

This Court finds Defendant's refusal to pay unreasonable pursuant to the no-fault statute and therefore orders Defendant to pay Plaintiff attorney fees under MCL 500.3148.

Therefore, contrary to defendant's assertion on appeal, the trial court *did* engage in an analysis of the reasonableness of defendant's refusal to pay. The trial court found that defendant had reasonable proof of its obligations in June 2023 but still continued to investigate Brown's eligibility. The trial court then determined that under those circumstances, defendant's refusal to pay was unreasonable. Having made the two requisite findings, the trial court granted plaintiffs' request for an award of attorney fees.

The trial court's reference to *Bronson* does not require a different result. In *Bronson*, the insurer argued that it received contradictory information creating genuine factual questions regarding whether a claimant was eligible for PIP benefits. *Bronson*, 314 Mich App at 581. The insurer argued that its investigation into the claimant's eligibility concluded when the claimant was deposed during discovery and her testimony provided conclusive evidence of her eligibility. *Id*. The insurer took the position that because it paid the claim within 30 days of concluding its own investigation, it was not liable to pay penalty interest or attorney fees. *Id*. The trial court agreed and denied penalty interest under MCL 500.3142. *Id*.

On appeal, this Court disagreed, noting that MCL 500.3142 does not allow an insurer additional time beyond the statutory 30 days to conduct its own investigation regarding the eligibility of the claimant to receive benefits. *Id*. at 582. The Court clarified that an insurer is not permitted extra time to "confirm[] for itself and on its own timeline a claimant's eligibility for benefits." *Id*. at 584. This Court further concluded that the insurer's argument regarding its liability to pay penalty interest under MCL 500.3142 was devoid of legal merit, such that attorney fees were appropriate under MCL 600.2591.[1] *Id*. at 585-596.

Although the *Bronson* analysis was framed as considering whether an insurer's payments were *overdue*, the analysis also supports that an insurer taking extra time for investigation after receiving reasonable proof of eligibility is *unreasonable*. This Court in *Bronson* expressed clear dissatisfaction with an insurer taking an "initial position that [a claimant] *might* be ineligible and then conduct[ing] enough discovery to satisfy itself that [the claimant] was, indeed, eligible for benefits," *Id*. at 583, which is exactly what occurred in the present case. Therefore, the trial court's reference to *Bronson*, when read together with the court's clear determinations that defendant's payments were both overdue and unreasonably delayed, does not require reversal.

---

[1] MCL 600.2591(1) provides that "[u]pon motion of any party, if a court finds that a civil action . . . was frivolous, the court . . . shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party. . . ." A frivolous action includes one in which "the party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a)(*iii*).

Not only did the trial court use the correct analysis, but the trial court reached the correct result. As noted, the trial court determined that defendant was obligated to pay penalty interest under MCL 500.3142(2) because its payments were overdue. This determination, which defendant does not dispute on appeal, satisfies the first requirement for an award of attorney fees *and* creates a presumption that defendant's delay was unreasonable. See *Brown*, 298 Mich App at 691. To rebut that presumption, defendant argues that its delay was reasonable because it received conflicting evidence regarding Brown's eligibility, and the best way to confirm coverage was to obtain written confirmation—which Brown and Progressive repeatedly refused to provide.

We conclude that the allegedly "conflicting" evidence regarding coverage did not create a legitimate factual uncertainty about Brown's insurance coverage, such that it was reasonable for defendant to delay payment. The accident occurred on May 14, 2023, and the police report indicated that Brown's motorcycle was insured by Progressive. When defendant called its insured, Woolf, on June 15, 2023, she stated that she heard Brown tell police officers that he had insurance but "didn't activate it yet." Woolf opined that she thought "that means he didn't have insurance." However, defendant then called Progressive representative Rosemary Wolohan on June 29, 2023, and "she did confirm that [Brown] did have an active policy." At this point, there is no conflict regarding coverage. Woolf's comment was speculative. Progressive's confirmation was definitive.

Moreover, nothing that defendant discovered after that point creates a legitimate factual uncertainty about its obligation to issue payments. For example, on March 26, 2024, plaintiffs provided defendant with several written documents pertaining to Brown's insurance policy. One such document was a copy of the declarations page for Brown's motorcycle coverage, confirming the policy was in effect at the time of the accident. Another document was a cancellation notice that Progressive sent to Brown, indicating that his policy was going to be cancelled due to nonpayment unless payment was "received or postmarked by 12:01 a.m. on May 14, 2023." Finally, defendant also received a coverage summary indicating that Brown made a change to his policy, effective May 14, 2023, at 7:32 p.m. All of this evidence supports that the policy, although at risk of cancellation at one point, did not actually lapse but remained in effect on the day of the accident—a point that defendant concedes on appeal.

Nevertheless, upon receipt of these documents in March 2024, defendant still delayed payment another four months until July 15, 2024. Three days later, on July 18, 2024, defendant deposed Brown. He testified, "My insurance was valid so it wasn't cancelled the morning of the accident." He did not recall receiving a cancellation notice from Progressive and insisted that "[his] insurance was up to date." As with the Progressive documents, this testimony did not establish that Brown was ineligible for coverage. Moreover, this testimony was taken *after* defendant began making payments, so it cannot be said to have created legitimate factual uncertainty about whether payment was owed. See *Ross*, 481 Mich at 11.

Accordingly, defendant did not create a genuine issue of material fact that its delay was reasonable, so the trial court did not err by granting summary disposition in favor of plaintiffs. See *El-Khalil*, 504 Mich at 160. Likewise, the trial court did not abuse its discretion by awarding attorney fees to plaintiffs under MCL 500.3148(1). See *Johnson*, 328 Mich App at 247.

## III. SUBJECT MATTER JURISDICTION

Defendant argues that the trial court lacked subject-matter jurisdiction over plaintiffs' claim because the no-fault fee schedule limitations reduced plaintiffs' maximum recovery to an amount below the $25,000 jurisdictional threshold of the circuit court. Additionally, at the time of the motion for summary disposition, plaintiffs admitted that less than $500 in claimed damages remained outstanding. We disagree.

We review jurisdictional questions based on a lack of subject-matter jurisdiction de novo. MCR 2.116(C)(4); *Sixarp, LLC v Twp of Byron*, ____ Mich ____, ____; ____ NW3d ____ (2025) (Docket No. 166190); slip op at 4.

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605. Under MCL 600.8301, "[t]he district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." In sum, the district court has subject-matter jurisdiction when the amount in controversy is $25,000 or less, and the circuit court has subject-matter jurisdiction when the amount in controversy is greater than $25,000. The Supreme Court has explained that, absent a finding of bad faith, the amount in controversy for purposes of a subject-matter jurisdiction inquiry should be determined by the pleadings, without including fees, costs, and interest. *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211, 221-224; 884 NW2d 238 (2016).

In determining that it had jurisdiction over plaintiffs' claims, the trial court relied on this so-called *Hodge* rule. The trial court found that: "Plaintiffs originally alleged the charges for medical care and treatment provided to Mr. Brown totaled over $25,000. However, since the filing of this action, Defendant has made payments to Plaintiff and intends to pay the remaining charges." The trial court went on to conclude that:

> [E]ven though Defendant decided to begin making payments after this case was filed, jurisdiction is still appropriate in this Court as the amount in controversy exceeded $25,000 at the outset. This Court finds no evidence of bad faith as it is only because Defendant made a "strategic" decision to make payments that this amount has decreased significantly.

Defendant argues that the *Hodge* rule does not apply to this case because it was "specifically addressed and rejected" in *Meisner*, 321 Mich App at 718. In *Meisner*, the plaintiff alleged claims exceeding $25,000, but the undisputed evidence showed that the claims could not be proved to exceed that amount under any legal theory. *Id*. at 725. This Court thus determined that the *Hodge* rule did not apply because the pleadings were made in bad faith. *Id*. at 718. According to defendant, plaintiffs' allegation of $76,796.33 in damages was similarly made in bad faith because the fee schedule in the no-fault act precluded Spectrum from receiving the entire

amount alleged.[2]  Plus, defendant had paid down the damages, such that the parties agreed that the outstanding balance at the time of the trial court's decision was only $500.  Neither argument is persuasive.

First, the present case is distinguishable from *Meisner*.  By defendant's own admission, even under the limitations of the no-fault act's fee schedule, defendant already made payments to plaintiffs in excess of the jurisdictional threshold of $25,000.  When responding to plaintiffs' motion for summary disposition, defendant repeatedly made statements to that effect.  One such example reads as follows:

> To date, Defendant has issued payments in excess of $25,000.00 to or on behalf of Claimant including $20,597.96 directly to Plaintiff for dates of service specifically identified in Plaintiff[s'] Complaint.  Defendant's review of Plaintiff[s'] claims is ongoing and it is likely that additional payments will be issued between the drafting of this summary and the date of mediation.

Therefore, it is clear that plaintiffs' allegations of damages were unlike those in *Meisner* that could not exceed $25,000 under any legal theory.  To the contrary, plaintiffs alleged that they were owed $76,796.33 on the basis of the bills it submitted to defendant, and defendant made payments toward that amount that—even when reduced according to the no-fault act's fee schedule—exceeded the jurisdictional threshold of the circuit court.  Obviously, then, plaintiffs' allegation that their claims exceeded the circuit court's jurisdictional threshold cannot be said to have been made with the same type of bad faith found in *Meisner*.

Likewise, defendant's payments eight months into the litigation do not have any effect on the amount that plaintiffs originally alleged in good faith in their prayer for relief.  See *Hodge*, 499 Mich at 221-224.  Therefore, the trial court did not err by concluding that it had subject-matter jurisdiction over plaintiffs' claims.

Affirmed.  Plaintiffs, being the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman

---

[2] The fee schedule for the no-fault act is codified at MCL 500.3157, and it establishes a cap on the fees that medical providers may recover.  According to the fee schedule, no matter what a medical provider might charge for its services, it can only recover an amount relative to the cost of corresponding treatment under Medicare.  MCL 500.3157(2).